## THE STATE v. POLSON.

1. **Criminal law :** EVIDENCE : WAIVER OF RIGHTS. In a criminal prosecution for a felony, the, defendant may waive the right, secured by the constitution, to be confronted with the witnesses against him, and consent that the testimony of the witnesses taken down in a former trial, based upon the same facts, may be read as evidence to the jury as a substitute for the oral testimony and presence of the witnesses.

2. —— PRACTICE. That the person who read the testimony to the jury was not sworn to do so correctly cannot be urged as an objection, where no such objection was raised at the time, and no prejudice is shown.

3. —— CONFLICTING EVIDENCE. A judgment of conviction will not be disturbed on the ground that the verdict is against the evidence, when the testimony is conflicting and nicely balanced.

*Appeal from General Term, Third. District (Decatur County).*

THURSDAY, JULY 21.

DEFENDANT was indicted for an assault with intent to commit murder, and, upon trial, was convicted and sentenced to imprisonment in the penitentiary for eight years. The general term affirmed the judgment of the district court. Defendant appeals to this court. The facts of the case, so far as are necessary to an understanding of the points ruled, appear in the opinion.

*J. W. Harvey* for the appellant.

*H. O'Connor*, Attorney-General, for the state.

BECK, J.—The prisoner was tried at a prior term of the court, upon an indictment for robbery. That indictment and the one in this case, were founded upon the same alleged acts of the defendant, which may be stated briefly, as follows. During twilight of the 20th day of

November, 1867, two men entered the house of one Shinn, in Decatur county. One of them, with a drawn revolver, demanded of the wife of Shinn the money in the house, stating that he knew there was a large amount. He made threats of shooting the wife and her children unless the money was produced, or in case any alarm was given. He proceeded to search the house, and found a pocket book containing a few dollars, which he took. The other man appears to have acted as a guard or watch against surprise, while the first was making search for the money. While these operations were being thus conducted, Shinn came into the house, whereupon one or both of the men commenced firing. Several shots were fired at Shinn, and it appears that a boy was wounded by one of them. The men escaped through a window of the house.

The defendant was indicted, as a participator in these acts, for robbery, and also for assault with intent to commit murder. Upon a trial for the first offense the evidence was reduced to writing. After the arraignment of defendant for trial in this case, on the indictment for assault with intent to commit murder, it was agreed in open court between the district attorney and the counsel of defendant, in the presence of the defendant and of the jury, "that in order to save time and facilitate the trial of the cause," the testimony taken upon the former trial "should be read to the jury as a substitute for the oral testimony of the witnesses in court." The record further states, that the person who reduced the evidence to writing "by request of the district attorney, in the presence of defendant and his attorneys, without being sworn, and without objection or express assent upon the part of defendant or his attorneys, proceeded to read the testimony taken at the last term of the court." The evidence so introduced to the jury is embodied in the record.

The State v. Polson.

I. The first point made by the defendant's counsel is that there was error in permitting the evidence under the agreement to be read to the jury. In support of this position it is insisted that the right of defendant to be confronted with the witnesses against him is secured by the constitution, and is of such a character that it cannot be waived nor surrendered by him. The clause of the constitution relied upon is as follows : " In all criminal prosecutions, and in cases involving the life or liberty of an individual, the accused shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him ; to have a copy of the same when demanded ; to be confronted with the witnesses against him ; to have compulsory process for his witnesses ; and to have the assistance of counsel." Art. 1, § 10.

It will be observed that the right secured by this provision to the accused, to be confronted with the witnesses against him, is a personal right limited to proceedings in criminal prosecutions, or where the life or liberty of the citizen is involved. The provision is not in the nature of an inhibition upon a proceeding not in accord with the one secured. Neither is it in the nature of a jurisdictional limitation upon the authority of the court, prohibiting the exercise of power except in the manner specified. It secures simply a personal right, and in no manner affects the jurisdiction of the court when prosecutions are tried. It very clearly appears that this right in proper cases, when no wrong can be done the accused, may be by him voluntarily waived. It is not different from the right to a speedy trial, which is secured by the same piovision. It cannot be denied that a prisoner may voluntarily consent to delay in his trial. Neither is the question before us unlike the one which might arise under an application of the state to continue a criminal trial on the ground of absent witnesses. The prisoner, by admit-

ting that the witness, if present, would testify as claimed by the state, may have the trial at once. Here he would consent that evidence should be introduced against him without his being confronted with the witness. We have never heard a doubt expressed of his power to do so, nor of the regularity of a conviction in such a case. We think these views are sustained upon principle and not without support from the authorities. It has been expressly ruled, that when a prisoner permits illegal testimony to be given to the jury without objection, he cannot afterward raise any claim of privilege on account of the admission of such evidence. *Bishop* v. *State*, 9 Geo. 121. See also the following authorities bearing upon the question under consideration: *Ray* v. *The State*, 1 G. Greene, 316; *State* v. *Nash*, 10 Iowa, 81; *McKinney* v. *The People*, 2 Gilman, 540; 2 Bishop's Crim. Law, §§ 672, 672a, and authorities cited.

II. The fact that the person who read the testimony was not sworn to do so correctly cannot be urged as an 2. — practice. objection. No objection was raised at the time because he was not sworn, and it is not pretended that any harm resulted to the prisoner by the omission, if such it be, to administer an oath to him. He must be considered as having discharged the duty for the court without objection from either party; and as it was done under the immediate eye of the court, we cannot see that any harm could possibly have resulted to the person therefrom. It is simply like the case of depositions being read by an attorney, clerk or other person, which no one will claim would be irregular.

III. The prisoner's counsel insist that the evidence was not sufficient to authorize a verdict of conviction. That 3. — conflict- part of the evidence connecting the prisoner ing evidence. with the crime was entirely circumstantial, as he was not identified by those upon whom the outrage

was committed.    While we might desire more conclusive evidence to relieve our minds from all doubt, were we passing as jurors upon it, yet we are unable to say that it is not of a character which sufficiently authorized the jury to conclude, beyond a reasonable doubt, that the defendant is guilty.    It was the province of the jury to determine the weight of the evidence, and to say whether it is sufficient to authorize a conviction.    We see nothing in the record which will justify the conclusion that this duty was not fairly and legally performed.

Affirmed.