## DIAZ *v.* UNITED STATES.

**ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.**

No. 384.    Argued November 16, 1911.—Decided February 19, 1912.

The provision against double jeopardy in the Philippine Act of July 1,
    1902, 32 Stat. 691, c. 1369, § 5, is in terms restricted to instances
    where the second jeopardy is for the same offense as was the first.
    *Gavieres* v. *United States,* 220 U. S. 338.
A charge of homicide made after death of the person assaulted is not
    the same as a charge of the assault before the death of that person.
One cannot be put in jeopardy for the offense of homicide prior to the
    death of the person upon whom the crime is committed.
Jeopardy cannot extend to an offense beyond the jurisdiction of the
    court in which the accused is tried.

One convicted in the Philippine Islands of assault before the death of the injured person is not put in second jeopardy, within the meaning of § 5 of the Philippine Act of 1902, by being placed on trial for homicide after the death of the person assaulted as a consequence of the assault.

The right of confrontation with witnesses secured by § 5 of the Philippine Act of July 1, 1902, is in the nature of a privilege extended to, rather than a restriction placed upon, the accused, and can be waived or asserted as he sees fit.

The admission by consent of the accused, without qualification or restriction of testimony taken elsewhere, is not a denial of the right of confrontation with witnesses secured by § 5 of the Philippine Act of July 1, 1902, and when so admitted, the testimony is equally available to the Government and to the accused.

When evidence taken elsewhere is admitted generally and without restriction by consent of the accused, it is not subject to the objection that it is hearsay.

The right to be heard by himself and counsel secured to the accused in all criminal prosecutions by § 5 of the Philippine Act of July 1, 1902, is the substantial equivalent of the similar right embodied in the Sixth Amendment, by which it should be measured. *Kepner* v. *United States*, 195 U. S. 100.

One not in custody cannot avail of the right to be heard so as to defeat the right of the Government to try him by absenting himself voluntarily and claiming that under the right to be present provisions of the Sixth Amendment the trial cannot proceed.

While the rule may be otherwise in cases that are capital, or where the accused is in custody under the control of the court, or where special statutory provisions apply, where the offense is not capital, and the accused is not in custody, his voluntary absence does not nullify what has been done in, or prevent the completion of, his trial, but operates as a waiver of his right to be present, and leaves the court free to proceed; and so *held* that the continuation of the trial during the voluntary absence of the accused in this case while it proceeded with his counsel present did not violate the provisions of § 5 of the Philippine Act of July 1, 1902, giving him a right to be present and heard.

Although concurrent findings of fact by both the Court of First Instance and the Supreme Court of the Philippine Islands are entitled to great respect, this court may independently examine the evidence, and in this case, after so doing it affirms the judgment.

15 Phil. Rep. 123, affirmed.

ON May 30, 1906, at San Carlos, Province of Occidental Negros, Philippine Islands, Gabriel Diaz, by blows and kicks, inflicted bodily injuries upon Cornelio Alcanzaren, and by reason thereof was the next day charged before the justice of the peace of San Carlos with assault and battery. At the hearing upon that charge Diaz was found guilty of a misdemeanor and fined fifty pesetas and costs, which he paid. Subsequently, on the twenty-sixth of June, Alcanzaren died, and Diaz was then charged before the same justice of the peace with homicide, it being alleged that the death ensued from the bodily injuries. At the preliminary investigation of this charge the justice concluded that there was reasonable cause to believe that it was well founded and accordingly held the accused to await the action of the Court of First Instance. There was then filed in that court a complaint charging Diaz with the crime of homicide, not capital, upon which he subsequently was tried, found guilty, and sentenced to a term of imprisonment and other penalties.

When called upon to plead in the Court of First Instance Diaz interposed a plea of former jeopardy, supported by a copy of the record of the proceedings before the justice of the peace upon the charge of assault and battery and at the preliminary investigation, but the plea was overruled. Then, during the trial, his counsel introduced in evidence the record of those proceedings. In doing this the counsel spoke only of "the proceedings in the case for a misdemeanor," but it otherwise appears that what was meant was the record of both proceedings. Both were embraced in a single document, authenticated by a single certificate, and it clearly is disclosed that counsel on both sides and the court treated the entire document as in evidence. It embraced the testimony produced before the justice at the hearing upon the assault and battery charge and at the preliminary investigation, including the personal statement of the accused and the report of an au-

topsy, upon the body of the deceased, performed conformably to the Philippine law; and it was partly upon this testimony that the Court of First Instance rested its judgment of conviction.

On two occasions, covering the examination and cross-examination of two witnesses for the government, Diaz, who was at large on bail, voluntarily absented himself from the trial, but consented that it should proceed in his absence, but in the presence of his counsel, which it did.

Following his conviction, Diaz prosecuted an appeal to the Supreme Court of the Philippines, where, subject to a change made in the term of imprisonment (see *Trono* v. *United States,* 199 U. S. 521; *Flemister* v. *United States,* 207 U. S. 372), the conviction was sustained, 15 Philippines, 123, and the case was then brought here.

*Mr. Frederic R. Coudert,* with whom *Mr. Howard Thayer Kingsbury* was on the brief, for plaintiff in error:

This court has jurisdiction of the cause and power to review all questions involved therein. § 10, Philippine Civ. Govt. Act, 32 Stat. 695.

Having jurisdiction of the case there exists the power to consider any question arising on the record. *Penn Mut. Life Ins. Co.* v. *Austin,* 168 U. S. 685, 695; *Giles* v. *Harris,* 189 U. S. 475, 486; *Horner* v. *United States,* 143 U. S. 570, 577; *Burton* v. *United States,* 196 U. S. 283, 295.

The conviction was based upon the testimony of witnesses with whom the defendant was not confronted. 32 Stat. 692; Phil. Comp. Stat., § 3270. Defendant cannot waive this right nor can he legally consent that the trial proceed in his absence. *Thompson* v. *Utah,* 170 U. S. 343, 354; *Hopt* v. *Utah,* 110 U. S. 574. *West* v. *Louisiana,* 194 U. S. 258, does not apply.

The use of the evidence against the defendant in the homicide trial was, therefore, in itself reversible error. *Motes* v. *United States,* 178 U. S. 458.

The introduction of the record of the assault case upon the homicide trial was merely in support of the defendant's plea of former jeopardy, and was so recognized by the court below (Rec., p. 51). Such record was merely evidence of the jeopardy. It was not, and could not be evidence of the facts which were in issue in the former trial. *Kirby* v. *United States*, 174 U. S. 47, 55.

The defendant's plea of former jeopardy was good and should have been sustained. A prosecution for assault and battery bars a second prosecution for homicide for the same act, where the person assaulted dies after the first and before the second prosecution.

This question appears never to have been presented to this court or to any American court of high authority, and is, therefore, open, and to be determined on principle, particularly in view of the conflicting character of the precedents in other courts. § 5 of Phil. Civ. Gov. Act; § 3281 Phil. Comp. Stat.; *Kepner* v. *United States*, 195 U. S. 100; *Trono* v. *United States*, 199 U. S. 521; *Gavieres* v. *United States*, 220 U. S. 338; Hammond's Blackstone, IV, 431; *Burton* v. *United States*, 202 U. S. 344, 380; *Carter* v. *McClaughry*, 183 U. S. 365, 395; *Hans Neilsen, Petitioner*, 131 U. S. 176.

To make the same act constitute several different crimes and prosecute for them all *seriatim* opens possibilities of persecution which the rule against second jeopardy is designed and should be made effective to prevent. *State* v. *Cooper*, 1 Green (N. J. Law), 361; *Queen* v. *Elrington*, 1 B. & S. 187; *Reg.* v. *Miles*, 17 Cox Cr. Cas. 9. See also *Reg.* v. *Stanton*, 5 Cox Cr. Cas. 324; *Wemyss* v. *Hopkins*, L. R. 10 Q. B. 378; *Reg.* v. *King*, 18 Cox Cr. Cas. 447; *Blair* v. *Georgia*, 81 Georgia, 629.

See dissent in *Reg.* v. *Morris*, L. R., 1 Crown Cases Reserved, 90. In that case and in *Reg.* v. *Salvi*, 10 Cox Cr. Cas. 481 (note); *Burns and Cary* v. *The People*, 1 Park. Cr. Rep. (N. Y.) 182; *Commonwealth* v. *Roby*, 12 Pick.

(Mass.) 496; *Commonwealth* v. *Evans,* 10 Massachusetts, 25; *State* v. *Littlefield,* 70 Maine, 452, either a new fact supervenes, for which the defendant is responsible, and changes the character of the offense, thus constituting a new and distinct crime, or relates back to the time of the assault. In other words, a man may first be prosecuted and punished for his act, and afterwards for its consequences; but see *Reg.* v. *Bird,* 5 Cox Cr. Cas. 1, 20, rendered after the passage of an English statute providing that upon any indictment for felony, involving an assault, the jury might acquit of the felony and convict of the assault.

Under the laws of the Philippine Islands, upon any prosecution the court may convict of any subsidiary offense involved in the offense charged. § 3284, Phil. Comp. Stat.; *United States* v. *Pineda,* 4 Phil. Rep. 223. In the case at bar, therefore, defendant might upon the homicide trial have been convicted of the very assault for which he had already been prosecuted and fined. He has, therefore, been twice in jeopardy for the same offense, in violation of the United States Constitution and the Philippine Civil Government Act; his second prosecution was unlawful and his conviction should be set aside. *Reg.* v. *Walker,* 2 Moody & Robertson, 446.

The conviction was without any competent evidence to support it and was contrary to law.

In reviewing a judgment based on the verdict of a jury the court can always consider whether there was any evidence to sustain the conclusion reached. *Halsell* v. *Renfrew,* 202 U. S. 287, 292; *Lancaster* v. *Collins,* 115 U. S. 222, 225; Phil. Comp. Stat., §§ 2764, 2765, 3311.

The presumption of innocence is expressly provided for by the Philippine statutes. § 3309, Phil. Comp. Stat.

It is an integral and essential portion of the law of this country as laid down by this court. *Kirby* v. *United States,* 174 U. S. 47, 55; *Coffin* v. *United States,* 156 U. S. 432, 458.

*The Solicitor General* for the United States:

The jurisdiction of this court under the writ of error is restricted to the question, whether any rights of the defendant secured by the Constitution or statutes of the United States have been violated. *Ong Chang Wing* v. *United States,* 218 U. S. 272; *Dowdell* v. *United States,* 221 U. S. 325.

The conviction upon the prosecution for assault and battery was not a bar to the prosecution for the homicide resulting from the assault. *Grafton* v. *United States,* 206 U. S. 333; *Commonwealth* v. *Roby,* 12 Pick. (Mass.) 496; *State* v. *Littlefield,* 70 Maine, 452; *Johnson* v. *State,* 19 Tex. App. 453; 1 Bishop's New Crim. Law, § 1059.

The right of the defendant to be confronted by the witnesses against him was not violated, for the record of the preliminary investigation was in evidence by his act and with his consent, for every purpose to which it was relevant. *Hancock* v. *State,* 14 Tex. App. 392; *Rosenbaum* v. *State,* 33 Alabama, 354; *State* v. *Fooks,* 65 Iowa, 452; *Williams* v. *State,* 61 Wisconsin, 281; *Reynolds* v. *United States,* 98 U. S. 145; *Ansbro* v. *United States,* 159 U. S. 695; *West* v. *Louisiana,* 194 U. S. 258; *Paraiso* v. *United States,* 207 U. S. 368; *Weems* v. *United States,* 217 U. S. 349; *Dowdell* v. *United States,* 221 U. S. 325.

MR. JUSTICE VAN DEVANTER, after stating the case as above, delivered the opinion of the court.

The provision against double jeopardy, in the Philippine Civil Government Act of July 1, 1902, 32 Stat. 691, c. 1369, § 5, is in terms restricted to instances where the second jeopardy is "for the same offense" as was the first. *Gavieres* v. *United States,* 220 U. S. 338. That was not the case here. The homicide charged against the accused in the Court of First Instance and the assault and battery for which he was tried before the justice of the peace, al-

though identical in some of their elements, were distinct offenses both in law and in fact. The death of the injured person was the principal element of the homicide, but was no part of the assault and battery. At the time of the trial for the latter the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense. *Commonwealth* v. *Roby*, 12 Pick. 496; *State* v. *Littlefield*, 70 Maine, 452; *Johnson* v. *State*, 19 Tex. App. 453. Besides, under the Philippine law, the justice of the peace, although possessed of jurisdiction to try the accused for assault and battery, was without jurisdiction to try him for homicide; and, of course, the jeopardy incident to the trial before the justice did not extend to an offense beyond his jurisdiction. All that could be claimed for that jeopardy was that it protected the accused from being again prosecuted for the assault and battery, and therefore required that the latter be not treated as included, as a lesser offense, in the charge of homicide, as otherwise might have been done under Phil. Comp. Stat., § 3284. *State* v. *Littlefield, supra.* It follows that the plea of former jeopardy disclosed no obstacle to the prosecution for homicide.

It is objected that the accused was deprived of the right, secured to him by § 5 of the Philippine Civil Government Act, *supra*, "to meet the witnesses face to face," in that the judgment of conviction for homicide was rested in part upon the testimony produced before the justice of the peace at the trial for assault and battery and at the preliminary investigation. But this objection overlooks the circumstances in which the record wherein that testimony was set forth was received in evidence. It was not offered by the Government, but by the accused, and was offered without qualification or restriction. And it is otherwise manifest that the offer included the testimony embodied in the record as well as the recitals of what

was done by the justice. It was all received just as it was offered, no objection being interposed by the Government. In some respects the testimony was favorable to the accused and in others favorable to the Government. It included a statement by the accused, who refrained from testifying in the Court of First Instance, and also the report of an autopsy which was favorable to him. In these circumstances the testimony was rightly treated as admitted generally, as applicable to any issue which it tended to prove, and as equally available to the Government and the accused. *Sears* v. *Starbird,* 78 California, 225, 230; *Diversy* v. *Kellogg,* 44 Illinois, 114, 121. True, the testimony could not have been admitted without the consent of the accused, first, because it was within the rule against hearsay and, second, because the accused was entitled to meet the witnesses face to face. But it was not admitted without his consent, but at his request, for it was he who offered it in evidence. So, of the fact that it was hearsay, it suffices to observe that when evidence of that character is admitted without objection it is to be considered and given its natural probative effect as if it were in law admissible. *Damon* v. *Carrol,* 163 Massachusetts, 404, 408; *Sherwood* v. *Sissa,* 5 Nevada, 349, 355; *United States* v. *McCoy,* 193 U. S. 593, 598; *Schlemmer* v. *Buffalo &c. Ry. Co.,* 205 U. S. 1, 9; *Neal* v. *Delaware,* 103 U. S. 370, 396; *Foster* v. *United States,* 178 Fed. Rep. 165, 176. And of the fact that it came from witnesses who were not present at the trial it is to be observed that the right of confrontation secured by the Philippine Civil Government Act is in the nature of a privilege extended to the accused, rather than a restriction upon him, *State* v. *McNeil,* 33 La. Ann. 1332, 1335, and that he is free to assert it or to waive it, as to him may seem advantageous. That this is so is a necessary conclusion from the adjudged cases relating to the like right secured by the constitutions of the several States and the Constitution of the United

States. Thus, it is held that the right is waived where, by the consent of the accused, the prosecution is permitted to read in evidence the testimony of an absent witness given in some prior proceeding, *Hancock* v. *State*, 14 Tex. App. 392; *Rosenbaum* v. *State*, 33 Alabama, 354; *Williams* v. *State*, 61 Wisconsin, 281; *State* v. *Polson*, 29 Iowa, 133; or a statement of what such a witness would testify, if present, as embodied in an agreement made to avoid a continuance or to dispense with the presence of the witness, *State* v. *Wagner*, 78 Missouri, 644, 648; *State* v. *Fooks*, 65 Iowa, 452; *State* v. *Mortensen*, 26 Utah, 312; *State* v. *Lewis*, 31 Washington, 75, 88; or the deposition of such a witness taken within or without the jurisdiction, *Butler* v. *State*, 97 Indiana, 378; *State* v. *Vanella*, 40 Montana, 326; *Wightman* v. *People*, 67 Barb. 44; *People* v. *Guidici*, 100 N. Y. 503, 508; *People* v. *Murray*, 52 Michigan, 288. In the last case, which involved a conviction for murder in the second degree, the question presented and the ruling thereon were stated by Judge Cooley as follows (p. 290):

"A chief ground of error relied upon is that the prosecution was allowed to put in evidence certain depositions taken out of court of witnesses not present at the trial. The facts seem to be that the attorneys for the respective parties stipulated to put in certain depositions on both sides, and they were put in accordingly. This, it is said, was in violation of the respondent's constitutional right to be confronted with his witnesses. But the court made no ruling in the matter; what was done was voluntarily done by the parties; the defendant had the benefit of the stipulation, and, for aught we can know, it may have been made chiefly in his interest. . . . The defendant undoubtedly had a constitutional right to be confronted with his witnesses. He waived that right in this case, apparently for his own supposed advantage and to obtain evidence on his own behalf. It would have been a mere impertinence for the court to have interfered and pre-

cluded this stipulation being acted upon. But it would have been more than an impertinence.; it would have been gross error. And it would be palpable usurpation of power for us now to set aside a judgment for a neglect of the court not at the time complained of, but in respect to something where any other course would have been plain error. Under the view taken by the respondent it would seem that when the evidence had been obtained under his stipulation, the court was put in position where it was impossible to avoid error; for if the evidence was received, he might complain, as he does now, that his constitutional right was violated, and if the court refused to receive it when he was consenting, the respondent would be entitled to have the conviction set aside for that error."

The view that this right may be waived also was recognized by this court in *Reynolds* v. *United States*, 98 U. S. 145, 158, where testimony given on a first trial was held admissible on a second, even against a timely objection, because the witness was absent by the wrongful act of the accused. In that case it was said:

"The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated."

As here the accused, by his voluntary act, placed in evidence the testimony disclosed by the record in question,

and thereby sought to obtain an advantage from it, he waived his right of confrontation as to that testimony and cannot now complain of its consideration.

It also is objected that the accused was wrongly convicted in that the trial proceeded in part in his absence. The facts in this connection are these: The accused was represented and heard by counsel at every stage of the proceedings. He also was present in person at all the proceedings preliminary to the trial and at the time it was begun and during the major part of it. But on two occasions, in the latter part of the trial, he voluntarily absented himself and sent to the court a message expressly consenting that the trial proceed in his absence, which was done. On these occasions two witnesses for the Government were both examined and cross-examined. No complaint grounded upon his absence was made in the trial court or in the Supreme Court of the Philippines; and the objection now made is, not that he did not voluntarily waive his right to be present, if he could waive it, but that it could not be waived, and that the court was therefore without power to proceed in his absence.

The Philippine laws, Comp. Stat. 1907, pp. 1004, 1005, 1006, 1009, contain the following provisions, bearing upon the presence of the accused at the proceedings upon a charge for felony:

"Sec. 3270. In all criminal prosecutions the defendant *shall be entitled* (a) to appear and defend in person and by counsel at every stage of the proceedings. . . .

"Sec. 3271. . . . If the charge is for felony (*delito*), the defendant *must* be personally present at the arraignment; . . .

"Sec. 3280. A plea of guilty can be put in *only* by the defendant himself in open court. . . .

"Sec. 3296. The defendant *must* be personally present at the time of pronouncing judgment if the conviction is for a felony; . . ."

Not only is there such a difference in the terms of these sections as naturally implies a difference in meaning, but it is evident that unless the first means something less than that the accused must be present at every stage of the proceedings there was no occasion for the provisions quoted from the others, and also that if the terms used in the others were deemed essential to express the thought that the accused must be present at particular stages of the proceedings, like terms would have been employed in the first had it been intended to make his presence equally requisite at other stages. It, therefore, is evident that the effect of these sections, when their differing terms are considered, is to make the presence of the accused indispensable at the arraignment, at the time the plea is taken, if it be one of guilt, and when judgment is pronounced, and to entitle him to be present at all other stages of the proceedings, but not to make his presence thereat indispensable. As here it does not appear, and is not claimed, that the accused was absent at any of the times when his presence was thus made indispensable, and as his absence during the latter part of the trial was not only voluntary, but coupled with an express consent that it should proceed in the presence of his counsel, as was done, it is plain that there was no infraction of the Philippine laws in that regard.

We are thus brought to the question whether the provision in § 5 of the Philippine Civil Government Act, securing to the accused in all criminal prosecutions "the right to be heard by himself and counsel," makes his presence indispensable at every stage of the trial, or invests him with a right which he is always free to assert but which he also may waive by his voluntary act. Of course if that provision makes his presence thus indispensable, it is of no moment that the Philippine laws do not go so far, for they cannot lessen its force or effect. An identical or similar provision is found in the constitutions of the

several States, and its substantial equivalent is embodied in the Sixth Amendment to the Constitution of the United States. It is the right which these constitutional provisions secure to persons accused of crime in this country that was carried to the Philippines by the congressional enactment, and, therefore, according to a familiar rule, the prevailing course of decision here may and should be accepted as determinative of the nature and measure of the right there. *Kepner* v. *United States*, 195 U. S. 100, 124.

As the offense in this instance was a felony, we may put out of view the decisions dealing with this right in cases of misdemeanor. In cases of felony our courts, with substantial accord, have regarded it as extending to every stage of the trial, inclusive of the empaneling of the jury and the reception of the verdict, and as being scarcely less important to the accused than the right of trial itself. And with like accord they have regarded an accused who is in custody and one who is charged with a capital offense as incapable of waiving the right; the one, because his presence or absence is not within his own control, and the other because, in addition to being usually in custody, he is deemed to suffer the constraint naturally incident to an apprehension of the awful penalty that would follow conviction. But, where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present. *Fight* v. *State*, 7 Ohio, pt. 1, 181; *Wilson* v. *State*, 2 Oh. St. 319; *McCorkle* v. *State*, 14 Indiana, 39, 44; *Hill* v. *State*, 17 Wisconsin, 675; *Stoddard* v. *State*, 132 Wisconsin, 520; *Sahlinger* v. *People*, 102 Illinois, 241; *Gallagher* v. *People*,

211 Illinois, 158; *Barton* v. *State,* 67 Georgia, 653; *Robson* v. *State,* 83 Georgia, 166; *Price* v. *State,* 36 Mississippi, 531; *Gales* v. *State,* 64 Mississippi, 105; *State* v. *Ricks,* 32 La. Ann. 1098; *State* v. *Perkins,* 40 La. Ann. 210; *State* v. *Kelly,* 97 N. Car. 404; *Lynch* v. *Commonwealth,* 88 Pa. St. 189; *Gore* v. *State,* 52 Arkansas, 285; *State* v. *Hope,* 100 Missouri, 347; *Frey* v. *Calhoun Circuit Judge,* 107 Michigan, 130; *People* v. *Mathews,* 139 California, 527; *State* v. *Way,* 76 Kansas, 928; *Commonwealth* v. *McCarthy,* 163 Massachusetts, 458; *United States* v. *Davis,* 25 Fed. Cas. 773; *United States* v. *Loughery,* 26 Fed. Cas. 998; *Falk* v. *United States,* 15 App. D. C. 446, 454; *S. C.,* 181 U. S. 618.

The reasoning upon which this rule of decision rests is clearly indicated in *Barton* v. *State, supra,* where it is said by the Supreme Court of Georgia:

"It is the right of the defendant in cases of felony . . . to be present at all stages of the trial—especially at the rendition of the verdict, and if he be in such custody and confinement . . . as not to be present unless sent for and relieved by the court, the reception of the verdict during such compulsory absence is so illegal as to necessitate the setting it aside. . . . The principle thus ruled is good sense and sound law; because he cannot exercise the right to be present at the rendition of the verdict when in jail, unless the officer of the court brings him into the court by its order.

"But the case is quite different when, after being present through the progress of the trial and up to the dismissal of the jury to their room, he voluntarily absents himself from the court room where he and his bail obligated themselves that he should be. . . . And the absolute necessity of the distinction, or the abolition of the continuance of the bail when the trial begins, is seen, when it is considered that otherwise there could be no conviction of any defendant unless he wished to be present at the time the verdict is rendered."

True, in that case the defendant was absent only at the reception of the verdict, but the decisions, as also the reasoning upon which they proceed, embrace absences at other stages of the trial. In *Falk* v. *United States, supra,* the accused, who was at large on bail, was present when the trial was begun and during the taking of a portion of the evidence for the Government, and then fled the jurisdiction. He was called and defaulted, and the trial proceeded in his absence, the remaining evidence being taken and a verdict of guilt returned. Subsequently he was apprehended, and sentence was then imposed, notwithstanding his objection that the trial had proceeded in his absence. In affirming the judgment the Court of Appeals, speaking through Mr. Justice Morris, said:

(p. 454) "It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. For by the statute (Rev. Stat. of U. S. Sec. 1015) he is entitled as a matter of right to be enlarged upon bail 'in all criminal cases where the offense is not punishable by death;' and, therefore, in all such cases he may by absconding prevent a trial. This would be a travesty of justice which could not be tolerated; and it is not required or justified by any regard for the right of personal liberty. On the contrary, the inevitable result would be to abridge the right of personal liberty by abridging or restricting the right now granted by the statute to be abroad on bail until the verdict is rendered. And this the counsel for the appellant appear candidly to admit. But we do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the adminis-

tration of justice as to the true interests of civil lib-
erty.  .  .  .

(p. 460) "The question is one of broad public policy,
whether an accused person, placed upon trial for crime and
protected by all the safeguards with which the humanity
of our present criminal law sedulously surrounds him, can
with impunity defy the processes of that law, paralyze
the proceedings of courts and juries and turn them into a
solemn farce, and ultimately compel society, for its own
safety, to restrict the operation of the principle of personal
liberty.  Neither in criminal nor in civil cases will the law
allow a person to take advantage of his own wrong.  And
yet this would be precisely what it would do if it permitted
an escape from prison, or an absconding from the jurisdic-
tion while at large on bail, during the pendency of a trial
before a jury, to operate as a shield."

But it is said that the question has been ruled otherwise
by this court in *Hopt* v. *Utah*, 110 U. S. 574; *Lewis* v.
*United States*, 146 U. S. 370; *Schwab* v. *Berggren*, 143 U. S.
442, and *Thompson* v. *Utah*, 170 U. S. 343.  We think this
is not the import of those cases.  In each the accused was
in custody, charged with a capital offense, and was sen-
tenced to death.  In the first, a part of the trial was had
in his absence notwithstanding the territorial statute de-
clared that he "*must* be personally present."  He did
not object at the time, and it subsequently was claimed
that, by his silence, he had consented to what was done.
But this court held otherwise, saying: "That which the
law makes essential in proceedings involving the depriva-
tion of life or liberty cannot be dispensed with or affected
by the consent of the accused, much less by his mere fail-
ure, when on trial and in custody, to object to unau-
thorized methods."  In the second case, "the prisoner
was not brought face to face with the jury until after the
challenges had been made and the selected jurors were
brought into the box to be sworn," and he excepted at the

time to the mode in which the challenges were required to be made. The ruling in this court was that the making of the challenges was an essential part of the trial, and that it was the right of the accused to be brought face to face with the jurors when the challenges were made. The other two cases are even less in point. In one the question was, whether the presence of the accused was essential in proceedings on error in an appellate court, and it was held that it was not essential. And in the other the question was, whether, when the applicable law contemplated that the accused should be tried before a tribunal composed of a court and a jury of twelve, he could by his silence or consent authorize a tribunal differently composed, and not recognized by law, to try him; and it was held that he could not.

We conclude that the Philippine laws before quoted accord to one charged with a felony the full right expressed in the congressional enactment, as that right was recognized and understood in this country at the time it was carried to the Philippines, and that in what was done in the present case there was no infringement of it.

Lastly, it is insisted that the evidence was inadequate to warrant the conviction. The trial was to the court without a jury, as is permitted in the Philippines, and both the trial court and the Supreme Court of the Islands concurred in finding the accused guilty under the evidence. Of course, these concurring findings are entitled to great respect. Nevertheless, following the rule recognized in *Wiborg* v. *United States*, 163 U. S. 632, 658, and *Clyatt* v. *United States*, 197 U. S. 207, 222, we have attentively examined the evidence as set forth in the record and discussed in the opinions of the Philippine courts, and are clearly of opinion that the conviction was warranted by it.

*Judgment affirmed.*

Mr. Justice Lamar, dissenting.

I dissent, because the trial was conducted in accordance with the rules of procedure of the Spanish law, and in disregard of the fundamental changes made by the Bill of Rights of the Philippine Islands. The defendant was not given a speedy trial, but was kept in jeopardy during repeated and lengthy suspensions.

He was not confronted with the witnesses, but the court accepted his telegraphic waiver, and the trial thereafter proceeded without the defendant being present. Witnesses were examined, argument of counsel made, and three months later sentence was pronounced, all in his absence.

On appeal the judgment was reversed by the Supreme Court of the Philippines, not for the purpose of setting the judgment aside, but to inflict a penalty of more than twofold severity and to raise the term of imprisonment from six to fourteen years in the penitentiary.

The act of July 1, 1902, regulating the government of the Philippine Islands, does not provide for trial by jury, nor does it destroy the power of the appellate court to change the sentence in a criminal case. But the absence of the right to trial by jury, and the presence of the danger of appeal make it all the more important to enforce those safeguards copied from the Constitution of the United States and granted the people of those islands.

Barring the right to indictment and trial by jury the defendant charged with a felony before a Philippine court has substantially the same rights as though he were on trial in a United States court. And if this conviction can stand, it must be because the same things would be proper in this country, where the language of the Constitution is, in this respect, substantially the same as that of Philippine Bill of Rights.

SEC. 5. "That in all criminal prosecutions the accused

shall enjoy the right to be heard by himself and counsel, to demand the nature and cause of the accusation against him, to have a speedy and public trial, to meet the witnesses face to face, and to have compulsory process to compel the attendance of witnesses in his behalf.

"That no person shall be held to answer for a criminal offense without due process of law; and no person for the same offense shall be twice put in jeopardy of punishment, nor shall be compelled in any criminal case to be a witness against himself."

Not only the fact that the defendant's liberty is involved, but the further fact that the decision will be a precedent in other cases, justifies a brief statement of the facts and reasons on which this dissent is based.

The opinion proceeds upon the theory that while a defendant has the right to be confronted with the witnesses, he may waive that privilege in all except capital cases. In support of that proposition many authorities are cited.

In some of these cases the defendant was voluntarily absent from the court room, for a short time, without the attention of the court being called to the fact. In others the defendant escaped while the trial was in progress. In others, having given bail, he failed to return in time to hear the verdict read. In all of them the court's decision was expressly, or by necessary implication, placed upon the ground that the defendant could not take advantage of his own wrong, and render a trial nugatory by escape or making an improper use of his bail.

These cases undoubtedly announce a correct rule. For, when the trial of a felony begins it ought to proceed in due and orderly course to verdict. The defendant has no right to force the court to order a mistrial. If he escapes or takes advantage of his bail to remain away during the trial, the court proceeds, not because it is willing that he should be absent, but because it is obliged to go on without him. But because the court is compelled so to act under

such facts, it does not follow that it could or would consent for him to be absent during the trial; or, that it would accept a formal waiver from him of the right to be confronted by the witnesses, or to be present when sentence was pronounced. As said in *Hopt's Case,* 110 U. S. 579:

"The argument to the contrary necessarily proceeds. upon the ground that he .alone is concerned as to the mode by which he may be deprived of his life or liberty. This is a mistaken view. . . . The public has an interest in his life and· liberty. Neither can be lawfully taken except in the mode prescribed by law. . . . If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the Constitution."

It is true, as pointed out in the opinion of the court here, that this was said in a case where the defendant was on trial for his life. But the principle was announced in language which, repeatedly and expressly,· made it applicable to felonies and wherever the defendant might be deprived of his life or liberty. The defendant, in such cases, cannot waive his right to be present when his liberty is involved, any more than when his life is at stake. And it is a misnomer to say that when he escapes or refuses to be present that he has waived the right. He has made it impossible for the court to give him his rights.

But, even if the doctrine of waiver could be extended beyond these cases of necessity, arising from flight and voluntary absence after the trial began, it would not apply in the present instance. The case was conducted from beginning to end as though it were civil litigation, with several suspensions of the trial—once for fourteen days— once for thirty days—and with three months between the argument and the rendition of the judgment. There was in this case, therefore, no compelling necessity, as in those cited in the opinion of the majority. The court accepted the defendant's waiver, as though he alone had an interest

in the method of trial,—ignoring the fact that, as said in the *Hopt Case,* "the public had an interest in his life and liberty."

In order to make this want of necessity clear it will be necessary to state some of the facts as they appear in this record.

The defendant lived in the town of San Carlos in the Province of Occidental Negros. He was charged with having killed Alcanzaren in that municipality. After a preliminary trial he was bound over to answer for the charge of homicide—equivalent to manslaughter and not punishable by death. He gave bond, and was subsequently brought to trial before the Court of First Instance, sitting at Bacolod, which, according to the maps is about 30 miles from San Carlos and on the other side of the Island. The distance between the two places by water is about 100 miles.

Diaz was arraigned and plead "not guilty" September 26, 1906. The case was several times continued, the defendant once or twice consenting. But on August 15, 1907, eleven months after arraignment, the trial began—the defendant and his counsel being present.

Two witnesses for the prosecution were examined. "At the request of the Fiscal the hearing was suspended and an order was issued for the arrest of" three absent witnesses. The record does not show to what date the court adjourned. But fourteen days later it reconvened, the defendant and his counsel again being present. The trial was resumed August 29, 1907, and two witnesses for the prosecution were examined.

The record does not show why the proceedings were again suspended, nor the date to which the court adjourned. But it does appear that after a delay of thirty days the court again reconvened, and that the judge had received a telegram from Diaz. It is copied into the record, and reads as follows:

"SAN CARLOS, *Sept.* 20/07.

Judge Jocson, Bacolod:

I waive right to be present during examination of government witnesses.

GABRIEL DIAZ."

Other entries of the same date show that "On September 20, 1907, in open court, the Honorable Vincente Jocson of the Tenth District presiding, the Provincial Fiscal and the counsel for defendant being present, the accused himself having waived his right to be present at the trial according to a telegram just received from him, the trial of this case was resumed and Pelagio Carbajosa, a witness for the prosecution, was examined. The prosecution then rested and counsel for defendant only introduced in evidence certified copy of the proceedings," before the Justice Court.   ".   .   .   The trial was then adjourned for the purpose of allowing the Fiscal to introduce evidence in rebuttal."

The next day the court again met, the Judge, Provincial and attorney for the defendant being present, "The trial of this case was resumed and   .   .   .   a witness for the prosecution was examined in rebuttal.   The Fiscal then rested his case and counsel for the accused waived his right to introduce further evidence.   Both parties having rested, the Fiscal and counsel for the defendant respectively made their oral argument, and the court declared the trial closed and took the case under advisement."

The court, however, did not adjourn to a given date, nor was there even a provision that the defendant and his counsel should be notified of the time and place when judgment would be entered and sentence pronounced.

The court waited ninety days. It then delivered an opinion, entitled in the case, and dated "Bacolod, Dec. 24, 1907," in which he discussed the evidence, and concluded by finding the defendant guilty and sentencing him to

confinement in the penitentiary for six years and one day.

Notice of this sentence was evidently received by the defendant, because on January 17, 1908, he entered an appeal to the Supreme Court of the Philippines. One of the judges of that court held that "there was no competent evidence to sustain a conviction," but the majority, "notwithstanding the deficiencies and irregularities that are observable in the prosecution of this case," reversed the case, not for the purpose of setting aside the conviction, but solely for the purpose of increasing the penalty. It thereupon sentenced him to a penalty of fourteen years of *reclusion temporal*, with the accessory penalties of Art. 59 of the Penal Code.

From these facts it will be seen that the Philippine Court of First Instance was not in the situation of an American court with a jury impanelled and under the necessity either of proceeding to verdict in the defendant's absence or of discharging the jury and rendering the trial nugatory. It assumed that if Diaz was willing to be absent the court could accept his waiver. The procedure adopted was evidently in accordance with the judge's view of the Spanish law, but in disregard of the fact that, under the Bill of Rights, when the trial began the defendant stood upon his deliverance. There could thereafter be the customary adjournments from day to day, but no suspensions of the trial except "in case of urgent necessity," "and for very plain and obvious causes." *United States* v. *Perez*, 9 Wheat. 579; *Thompson* v. *United States*, 155 U. S. 271, 274.

At common law the trial of felonies was required to be completed at one sitting. Of necessity this rule had to be modified, and adjournments from day to day were finally allowed. There are a few instances in which the case was suspended for a reasonable time, in order to permit the attendance of witnesses who had been unavoidably de-

layed, or for other proper cause, in the discretion of the judge conducting the trial. But without regard to the delay of eleven months between arraignment and trial, the extremest extension heretofore allowed is insignificant by comparison with those here, first for two weeks and then for thirty days. In both these instances the record fails to show that the defendant objected, and it may be that if he can waive the right to be confronted by the witnesses he may waive the guaranty against multiplied jeopardy. For that right is not greater than the right to be present at every stage of the trial.

The court being of the opinion that the defendant need not be present at the trial, it is not surprising that he thought the defendant might also be absent when judgment was rendered and sentence pronounced. It is true that the Philippine Code expressly declares that the defendant "must be personally present at the time of pronouncing judgment if the conviction is for a felony." But that could no more add to the Bill of Rights, than a statute could repeal the requirement that the defendant should be confronted with the witnesses, and be present at every stage of the trial. That the defendant was not personally present is both the legal inference and the natural conclusion from what appears in the record. When the court took the case under advisement on September 21, 1907, it passed no order indicating when the decision would be delivered, even if it had the right to hold the defendant in suspense for days and weeks and months. There was, therefore, no reason for the defendant to be present at Bacolod on December 24, in anticipation that judgment would be entered on that date.

There are cases which hold that where the record shows that the defendant was present when the trial began, there is a presumption that he remains in attendance, and it is not necessary to repeat the statement in the record, from day to day, so as to affirmatively show that

he was present. In the present case the presumption would be the other way, because, having been absent during the last two days of the trial, there is no reason to assume that he was present when, after an indeterminate suspension, the court reconvened. At any rate there is peculiar room for the application of the rule in Federal courts announced in *Lewis* v. *United States*, 146 U. S. 370, 372, that "where the personal presence is necessary in point of law, the record must show the fact."

In my opinion the conviction was not only erroneous because the defendant was not present when the witnesses were examined and argument made, but having been unlawfully put in double jeopardy and judgment equivalent to verdict having been pronounced in his absence, he is entitled to his discharge. *Nolan* v. *State*, 55 Georgia, 521.

It may be that such views would work a radical change in criminal procedure in the Philippines. But when Congress incorporated the language of the Sixth Amendment into the act of July 1, 1902, it must have intended to make just such changes, and to require the trial to be conducted in the American manner, and, among other things, also to prohibit suspensions and undue prolongation of the hearing, so as thereby to prevent the pain and anxiety which must inevitably be suffered by a prisoner who is thus kept on a mental rack.

These considerations compel me to dissent, and to add, that if the effort to review this judgment can lawfully result in having the sentence more than doubled, it imposes a penalty on the exercise of the right, and makes it worse to appeal than to submit to conviction on a record which, the Supreme Court of the Philippines admitted, presented "irregularities and deficiencies."