Samuel **PETTYJOHN**

v.

**H. Q. EVATT, Sheriff, Hamilton County, Tennessee.**

**Civ. A. No. 6847.**

United States District Court, E. D. Tennessee, S. D.

Jan. 24, 1974.

Brown & Brown, Chattanooga, Tenn. (Gene R. Griffin), for petitioner.

Edward E. Davis, Dist. Atty. Gen., Chattanooga, Tenn., William C. Koch, Jr., Asst. Atty. Gen., Nashville, Tenn., for respondent.

### OPINION

FRANK W. WILSON, Chief Judge.

This is a proceeding upon a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 in which the petitioner seeks to set aside his convictions and sentences in two cases, each entitled "State of Tennessee v. Samuel Pettyjohn," being Docket Nos. 114,458 and 114,491 in the Criminal Court for Hamilton County, Tennessee. In Case No. 114,458, the petitioner was convicted of assault with intent to commit second degree murder and sentenced to not less than one nor more than two years. In Case No. 114,491, the petitioner was convicted of carrying a pistol and sentenced to 11 months and 29 days and fined $50.00. The petitioner's sole contention is that he had been previously tried, convicted and fined for the same offenses in the municipal court for the City of Chattanooga, Tennessee, and that his state court convictions were accordingly illegal as having been obtained in violation of his right under the Fifth and Fourteenth Amendments of the

United States Constitution not to twice be placed in jeopardy for the same offenses. This issue was presented in a post-conviction proceeding in the state courts and was ultimately found to be without merit by the Tennessee Supreme Court. The exhaustion of state court remedies is accordingly conceded.

The case is presently before this Court upon the petition for habeas corpus, the answer of the respondent, certain portions of the technical records in the state and municipal court proceedings and certain unpublished opinions of the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court. The parties have submitted the case for decision upon this record and it appears that the record is adequate for a decision of the issues presented without further evidentiary proceedings.

■ The following facts appear undisputed in the record now before the Court. Upon February 1, 1968, the petitioner was taken into custody by the Chattanooga, Tennessee police upon four warrants of arrest. Two of the warrants charged the petitioner with carrying a pistol, one alleging violation of a municipal ordinance and the other alleging a violation of the state law. The other two warrants charged the petitioner with having committed an assault, one alleging an assault and battery in violation of a municipal ordinance and the other alleging an assault with a pistol in violation of state law. All four charges arose out of the same episode, an altercation that occurred between the petitioner and one Sam Stultz upon January 30, 1968. Upon February 5, 1968, the City Judge of Chattanooga heard proof in all four cases. He found the petitioner guilty upon the two municipal charges and imposed a fine of $50.00 in each case. As committing magistrate, he bound the petitioner over to the grand jury upon the two state charges. The petitioner thereupon took an appeal from the two municipal court convictions. Under Tennessee law such an appeal had the effect of setting aside the municipal court conviction and granting

the petitioner a trial *de novo* in the Circuit Court of the state. *See* T.C.A. § 27–502. *See also* Memphis v. Schade, 59 Tenn. 579 (1873); O'Haver v. Montgomery, 120 Tenn. 448, 111 S.W. 449 (1908); Deming v. Nichols, 135 Tenn. 295, 186 S.W. 113 (1916). While the appeals from the two municipal court convictions were pending and prior to any *de novo* hearing thereon, the petitioner was indicted, tried and convicted upon the two state charges, those convictions having occurred in a jury trial held upon May 21, 1969. A sentence of not less than one year nor more than two years was imposed upon the assault conviction and a sentence of 11 months and 29 days and a fine of $50.00 was imposed upon the pistol carrying conviction.

Thereafter, upon July 31, 1969, a trial *de novo* was held in the state circuit court upon the petitioner's appeal from his two municipal court convictions, with the result that the petitioner was again found guilty upon these charges and fined $50.00 upon each charge. These fines were eventually paid.

In the meanwhile, execution of the two sentences of imprisonment was stayed while the petitioner sought appellate and post-conviction relief in the state courts. The record does not reflect whether double jeopardy or due process was made an issue by the petitioner in his direct appeal. The record does reflect that his convictions were affirmed upon appeal. It is clear, however, that following the decisions of the United States Supreme Court in the cases of Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), and Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), the petitioner filed a post-conviction petition in the state court asserting the double jeopardy issue and the matter was eventually taken to the Tennessee Supreme Court. Although the petitioner's double jeopardy contention was initially sustained by the Tennessee Supreme Court, upon reconsideration that Court reversed itself and denied the contention, concluding that

double jeopardy would not lie since the petitioner's convictions upon state charges occurred while his municipal convictions were on appeal and prior to his ultimate conviction upon those charges after a *de novo* hearing. The substance of the Tennessee Supreme Court decision on the double jeopardy issue may be found in the following excerpts from their opinion upon rehearing:

"The general rule is that a defendant, who on his own motion has a judgment against him set aside, cannot plead double jeopardy to bar a subsequent conviction on the same or similar charges. As stated in 21 Am.Jur. 2d, "Criminal Law," § 209, 'A defendant waives his constitutional protection against double jeopardy when a verdict or judgment against him is set aside at his own instance either on motion in the lower court or on a successful appeal.' See also 22 C.J.S., "Criminal Law" §§ 271 and 272. This general rule is reflected in our Tennessee cases, *e. g.,* Davis v. State, 199 Tenn. 51, 282 S.W.2d 357 (1955) and State ex rel Austin v. Johnson, 218 Tenn. 433, 404 S.W.2d 244 (1966).

"The crux of this case is that the granting of a trial de novo effectively 'sets aside' the original conviction, leaving nothing upon which the defendant can base a plea of former jeopardy . . .

"The petitioner in this case voluntarily released himself from the jeopardy that arose as a result of his first trial in the city court when he sought a new trial on the merits in the criminal court. There, proof was heard as though it were the first trial on the municipal warrants. Now petitioner seeks to benefit from both the jeopardy and the annulment of the first conviction. The municipal convictions, from which Pettyjohn had appealed, did not constitute jeopardy barring the subsequent state conviction."

At issue is whether the above rationale and conclusions of the Tennessee Su-

preme Court are in harmony or in conflict with controlling decisions of the United States Supreme Court in interpreting the Double Jeopardy Clause of the Federal Constitution. Also at issue is a contention not presented to or dealt with by the Tennessee Supreme Court, and that is the respondent's further contention that no claim of double jeopardy would lie since the municipal court was a committing magistrate only with reference to the state charges and was without jurisdiction to try the greater offenses stated in those charges. The respondent relies upon the case of Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1911) in support of this contention.

As a point of departure for discussing the federal law of double jeopardy as it applies to the facts and contentions in this case, it should be noted that at the time the petitioner was convicted in the state court (1969), the double jeopardy provision of the Fifth Amendment to the Federal Constitution was interpreted by the United States Supreme Court as not being applicable to the states. *See* Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). See the discussion in this regard in the case of Robinson v. Henderson, 268 F.Supp. 349 (E.D.Tenn.1967). At that time the Tennessee courts, in interpreting the state constitution, adhered to the rule that a conviction in a municipal court of an offense against the municipality was not a bar to a subsequent prosecution for violation of state law growing out of the same facts. Mullins v. State, 214 Tenn. 366, 380 S.W.2d 201 (1963).

In 1969, in the case of Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, the United States Supreme Court overruled the *Palko* case, *supra,* and concluded that the Fifth Amendment was made applicable to the states through the Due Process Clause of the Fourteenth Amendment. In 1970, in the case of Waller v. Florida, 397 U. S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, the Court held that state and municipal convictions derived from the same sovereignty and were therefore indistinguishable for double jeopardy purposes. In 1973, in the case of Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29, the double jeopardy rule announced in *Waller, supra,* was held to be fully retroactive in its application. The effect of these three decisions was to alter retroactively the double jeopardy rule followed in Tennessee prior to 1970, and in fact followed until the 1973 decision in Robinson v. Neil, *supra.* These matters were properly recognized by the Tennessee Supreme Court in its opinion denying post-conviction relief to the petitioner. Rather, as previously noted, relief was denied in that court upon the ground that the petitioner's appeal of his municipal court convictions had the effect of setting aside those convictions and of effecting a waiver of his right to rely upon them at the time his state court convictions were had. In a concurring opinion by one Justice, it is emphasized that no municipal court conviction was in effect at the time of the state court convictions.

■ It should initially be pointed out that double jeopardy is not limited in its application to prior convictions, nor is it merely a prohibition against twice being punished for the same offense. It is in fact equally applicable to a prior acquittal. It is also concerned with the problem of whether an accused has twice been put to trial, *i. e.,* twice been placed in jeopardy. As stated in the case of United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971):

"The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings. A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial. And Society's awareness of the heavy personal strain which a criminal trial represents for

the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws. . . . These considerations have led this Court to conclude that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge."

■ The constitutional proscription against double jeopardy is, of course, not so all encompassing as to prohibit every subsequent trial or retrial of an accused, as, for example, where a new trial is procured at the instance of the accused upon motion or appeal. The concept of continuing jeopardy, as distinguished from double jeopardy, was early developed, the case of Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), being often cited for this principle. The rule enunciated in the *Ball* case that the Constitution "does not preclude the Government's retrying a defendant whose conviction is set aside because of an error . . ." is so well recognized that it is often referred to as the "Ball Principle". *See* United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

■ Various theories have been advanced to justify the principle laid down in the *Ball* case and other cases following that principle. As might be expected, a waiver theory appeared quite early. For example, the Court speaks in terms of waiver in applying the principle in the case of Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904). Although courts still occasionally use the "waiver" label in discussing the Ball Principle, as did the Tennessee Supreme Court in this case, the waiver theory has in recent years been disavowed by the United States Supreme Court. *See* Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) ; Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

*See also* United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) ; United States ex rel. Jackson v. Follett, 462 F.2d 1041 (2nd Cir. 1972) ; Howard v. United States, 372 F.2d 294 (9th Cir. 1967) ; Forsberg v. United States, 351 F.2d 242 (9th Cir. 1965). Rather than relying upon a contrived theory of waiver, the Ball Principle is now justified upon the pragmatic ground of balancing the interests of society in seeing that criminals are punished for their crimes against the interests of an accused not to be twice placed in jeopardy for the same offense.

■ Accordingly, to the extent that waiver is relied upon by the respondent as justifying a denial of the petitioner's double jeopardy claims, that contention must be rejected.

■ Applying the Ball Principle to the facts of this case, it might be contended that after his prior conviction upon municipal charges had been set aside by his act of effecting an appeal therefrom, the petitioner's retrial upon state charges was but a "continuing jeopardy" and not a "double jeopardy". Although the Tennessee Supreme Court expressly stated waiver as the basis for its decision, the continuing jeopardy rationale is implicit in the decision of the Court denying double jeopardy relief. However, like waiver, this rationale must likewise be rejected upon the authority of Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), and Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), for the petitioner's double jeopardy contentions must be tested in the light of the principles laid down in those cases.

In the *Green* case the petitioner had been tried and convicted of first degree murder after an earlier guilty verdict upon the lesser included offense of second degree murder had been set aside on appeal. The Court reversed the first degree murder conviction obtained at the retrial, holding that it was barred on principles of double jeopardy. In reach-

ing this conclusion, a majority of the Court reasoned that further prosecution for the greater offense of first degree murder was barred on principles of double jeopardy when the first jury "was given a full opportunity to return a verdict" on that charge and instead reached a verdict of guilty on the lesser charge. 355 U.S. at 191, 78 S.Ct. at 225, 2 L.Ed. 2d at 206.

In Price v. Georgia, *supra*, the petitioner was tried for murder and convicted of the lesser included offense of voluntary manslaughter. Upon appeal this conviction was reversed. Upon retrial the case was again submitted to the jury upon the original greater offense but the jury again returned a verdict of guilty upon the lesser included offense of voluntary manslaughter. Going one step further than in the *Green* case, the Court set aside the second conviction upon grounds of double jeopardy, even though that conviction was for the same offense as was the initial conviction upon which a new trial had been granted. In so holding, the Court stated:

> "The continuing jeopardy principle necessarily is applicable to this case. Petitioner sought and obtained the reversal of his initial conviction for voluntary manslaughter by taking an appeal. Accordingly, no aspect of the bar on double jeopardy prevented his retrial for that crime. However, the first verdict, limited as it was to the lesser included offense, required that the retrial be limited to that lesser offense. Such a result flows inescapably from the Constitution's emphasis on a risk of conviction and the Constitution's explication in prior decisions of this Court."

■ The analogy between the facts in Pettyjohn and the facts in Green v. United States and Price v. Georgia is clear. Pettyjohn was convicted for the lesser municipal offenses of carrying a pistol and assault and battery. He obtained an automatic new trial upon these convictions by taking an appeal. Thereupon he was tried and convicted in a different court but by the same sovereignty for the greater state offenses of carrying a pistol and assault with intent to commit second degree murder. Applying the rule announced in Price v. Georgia that "the first verdict, limited as it was to the lesser included offense, required that the retrial be limited to that lesser offense," Pettyjohn's "retrial" upon the greater state offenses would have been barred upon double jeopardy principles.

The same analogy would exist and the same conclusion would be required by the decision of the Sixth Circuit Court of Appeals in the case of Mullreed v. Kropp, 425 F.2d 1095 (6th Cir. 1970). There the petitioner was charged with armed robbery. The state accepted a plea of guilty to unarmed robbery and the armed robbery charge was not prosecuted. The guilty plea was later set aside in post-conviction proceedings and the state then prosecuted and obtained a conviction upon the armed robbery charge. In a post-conviction attack upon this conviction, claiming double jeopardy, the state contended that the successful attack upon the first conviction vitiated those proceedings and rendered them a nullity. The Court sustained the double jeopardy contention, however, holding that the first proceedings were "effective to deprive him of his liberty until his attack on that conviction was successful. The practical effect of his guilty plea had the same impact upon Mullreed as a jury verdict of guilty would have had. To sustain the State's contention here would be to place a distinction lacking substance upon the foundation of a legal fiction. We are unwilling to adopt this reasoning." *See also* Wood v. Ross, 434 F.2d 297 (4th Cir. 1970) for a case to a similar effect.

■ There remains to consider the state's contention that since the municipal court was a court of limited jurisdiction, not having jurisdiction to try the petitioner upon the state offenses, the petitioner was not exposed to a trial or conviction upon the state charges in that

court and accordingly a claim of double jeopardy would not lie to the subsequent trial and conviction upon the state charges in another state court. The state relies upon the case of Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1911), in support of this position. The *Diaz* case involved a defendant who was initially convicted of assault and battery before a justice of the peace in the Philippine Islands. Subsequently his victim died and the defendant was convicted of murder. The Court held that the intervening death precluded any double jeopardy problem, but then went further to note by way of dicta that no claim of double jeopardy would lie where the first court, in this case a justice of the peace court, had no jurisdiction to try the greater offense.

This Court has dealt with the *Diaz* case in its opinion in the case of Robinson v. Neil, 366 F.Supp. 924 (1973). After discussing the case of Culberson v. Wainwright, 453 F.2d 1219 (5th Cir. 1972), wherein the Fifth Circuit concluded that the above cited dicta from *Diaz* had been rejected by implication in Waller v. Florida, *supra,* this Court concluded by saying:

> "It is clear that the Constitution prohibits the trial of a person for an offense where he has been previously charged with and convicted of a lesser included offense arising out of the same act or activity. Thus the problem before the Court resolves itself to the question of whether, by limiting the jurisdiction of its courts, a state may deny any individual his constitutional right not to be placed twice in jeopardy for the same offense. *Diaz* is not persuasive in this regard because this issue was not then before the Supreme Court. . . . This Court is of the opinion that states may not, by the device of creating courts of limited jurisdiction, avoid the constitutional mandate against placing a person twice in jeopardy for the same offense.

> "The decision reached herein does not impose an undue hardship on the state. It merely requires that the prosecution of individuals accused of criminal activity be managed in such a way that those individuals are not forced to climb a ladder of multiple criminal prosecutions from the 'least' included offense to the greatest. In this regard, any breakdown in communications between the state and municipal officials forms no justification for depriving an accused person of his right to plead double jeopardy. *See* Waller v. Florida, *supra.* Thus the Court concurs in the results reached in Culberson v. Wainwright, 453 F.2d 1219 (5th Cir. 1972), cert. den. 407 U.S. 913, 92 S.Ct. 2449, 32 L.Ed.2d 688 (1972), though not in its rationale."

A judgment will accordingly enter setting aside the petitioner's convictions and sentences in Criminal Docket Nos. 114,458 and 114,491 in the Criminal Court for Hamilton County, Tennessee, and the petitioner will be forthwith released from custody and/or supervision by reason of the said convictions and sentences; provided, however, that the release of the petitioner from further custody and/or supervision will be stayed for a period of five days following the entry of a judgment on this opinion to permit the respondent time within which to elect whether he shall take an appeal herein or seek any further stay from the appellate court. Should no further stay be entered within five days, the petitioner will be forthwith released without further conditions upon his release by reason of the aforesaid sentences.