OPINION OF THE COURT
Richard A. LaPera, J.
Defendant, Robert Cruz, is charged under indictment *288 number 3136N-97 with the crimes of rape in the first degree, sexual abuse in the first degree and endangering the welfare of a child. The charges arise out of events alleged to have occurred between on or about November 24 and December 25, 1994.
The defendant was arraigned before the Honorable Jack Mackston, J.C.C., on November 13, 1997. Upon Judge Mackston’s retirement, the case was assigned to this court for all further proceedings. Once before this court, the case was adjourned several times, motions were submitted and the case was eventually set for trial on September 21, 1998. On that date, the defendant did not appear and a warrant was issued for his arrest.
Upon motion of the People dated October 7, 1998, this court ordered a hearing be held pursuant to People v Parker (57 NY2d 136) to determine whether the defendant had voluntarily waived his right to be present at the trial of this indictment and to explore the efforts made by the People in locating the defendant.
This court conducted the hearing on March 2 and 10, 1999. The hearing is decided as follows:
A defendant’s right to be present at a criminal trial is encompassed within the Confrontation Clauses of the State and Federal Constitutions (NY Const, art I, § 6; US Const 6th Amend) and the Criminal Procedure Law of the State of New York (CPL 260.20, 340.50). Both the United States Supreme Court and the New York State Court of Appeals have held that the right to be present may, as a general matter, be waived under both Constitutions. (Diaz v United States, 223 US 442; People v Byrnes, 33 NY2d 343.) In Byrnes, the Court of Appeals addressed the issue of a defendant’s right to be present as guaranteed by the State and Federal Constitutions in the context of a disruptive defendant who was removed from the courtroom during a portion of the trial by a Trial Judge acting “well within his discretion” (see, People v Byrnes, supra, at 349).
It wasn’t until 1982, in People v Parker (supra), that the Court of Appeals set forth the applicable constitutional standards to be applied to a case involving a defendant who is not merely disruptive during trial, but one who has failed to appear for trial at all. “Although the right to be present at a criminal trial may be waived, the right is of a fundamental constitutional nature and therefore the validity of any waiver including one which could be implied, must be tested according to constitutional standards.” (People v Parker, at 140.)
*289 In order to effect a voluntary, knowing and intelligent waiver, a defendant must be informed in some manner of the nature of the right to be present at trial and the consequences of failing to appear for trial.
At the hearing, the People introduced seven adjournment slips, each containing the defendant’s name in the caption; the date the case was to be adjourned to; which party was requesting the adjournment; the reason for the adjournment and the defendant’s signature as well as that of his attorney. Each of the slips contains the preprinted admonition: “If I do not appear on my adjourned date, a warrant will be issued for my arrest, any bail posted will be forfeited, and future proceedings, including hearings, trial and sentence will be held in my absence and the District Attorney may also charge me with bail jumping.”
During the hearing, the People called the defendant’s former attorney, Benedict Gullo, Esq., who testified that on each and every occasion other than the date set for trial, the defendant appeared, and that the defendant signed each of the adjournment slips in his presence. Mr. Gullo testified further that on each of those dates, family members or friends of the defendant were present to assist in the translation of Mr. Gullo’s instructions to him.
The People also called Detective Joseph Hess of the Nassau County Police Department First Squad who testified about the efforts made to locate Mr. Cruz. Detective Hess recounted his conversations with several people who knew the defendant, including Milagros Espinal, the woman who had posted bail for the defendant. Detective Hess was able to ascertain from these witnesses that the defendant had traveled to the Dominican Republic sometime after his last court date before trial, and that he was still there at the time the bench warrant was issued on September 21, 1998. In fact, according to Ms. Espinal, the defendant or his family had already repaid her for the forfeited bail money. Detective Hess also testified that he was able to secure a telephone number for the defendant from one of the witnesses he had contacted while looking for him, and that his partner called the number in January of this year and had spoken with a man who, at least initially, identified himself as Robert Cruz.
The People’s position, as eloquently stated by Assistant District Attorney Joseph Onorato, is that the signed adjournment slips and the conversations had with his attorney and family members during each court appearance, along with the *290 fact that the defendant appeared on each and every date indicated on the signed adjournment slips up to, but excluding the date set for trial, is evidence sufficient to allow the court to infer that the defendant was aware of his right to be present at trial and aware of the consequences of his failing to appear. The People also point to the fact that witnesses had seen the defendant in the Dominican Republic after the issuance of the bench warrant and that the surety was repaid for forfeited bail by the defendant and/or his family, as further evidence that the defendant’s absence from the jurisdiction was purposeful and designed to avoid prosecution on the pending indictment.
The court agrees. Despite defense counsel’s arguments to the contrary, and despite the fact that testimony was adduced at the hearing regarding the defendant’s difficulties with the English language, the court finds that a review of the totality of the facts and circumstances surrounding the case, including events leading up to and since the issuance of the bench warrant, lead to the inescapable conclusion that the defendant knowingly, voluntarily and intelligently waived his right to be present at trial and any other future proceedings.
However, that is not the end of inquiry in determining whether or not a defendant should be tried in absentia. “[E]ven after the court has determined that a defendant has waived the right to be present at trial by not appearing after being apprised of the right and the consequences of nonappearance, trial in absentia is not thereby automatically authorized.” (People v Parker, supra, at 142.) The Court goes on to counsel trial courts to exercise sound discretion in the consideration of all appropriate factors, including: (1) the possibility that the defendant could be located within a reasonable period of time.
The Court goes on to suggest that in the majority of cases, a bench warrant is a suitable alternative to a trial in absentia unless, “the prosecution can demonstrate that such a course of action would be totally futile.” (People v Parker, supra, at 142.)
Therefore, the question must logically turn to a determination of what efforts the People have made in attempting to locate the defendant, and what chance exists that the defendant, if located, could or would be returned to the jurisdiction to face the charges. To that end, Detective Hess testified at length regarding his efforts to find Mr. Cruz. In addition to visiting the defendant’s last known address and place of employment, the detective sent letters, met with the Freeport Police, went to New York City to interview witnesses and ultimately determined, in all likelihood, where the defendant *291 was. In regard to his efforts to secure the defendant’s return from the Dominican Republic, Detective Hess testified that he made several phone calls to the Federal Bureau of Investigation and to the United States Attorney’s Office to inquire about the existence of extradition treaties and procedures to follow in attempting to secure the defendant’s return from the Dominican Republic. When asked to summarize those efforts, Detective Hess’ response to questioning by the People was, “No luck so far.” When questioned further by defense counsel, Detective Hess was more specific in his responses as to who he had spoken with at the FBI and the name of the Assistant United States Attorney and the dates of those conversations. He also indicated during his testimony that he was aware of an extradition treaty that exists between the United States and the Dominican Republic, that he was aware that rape was an offense included in that treaty, and that he had never formally applied to the Governor, the State Department or the Department of Justice for an extradition warrant. He then reiterated his position that he had no luck thus far, and was still waiting to hear back from someone.
Defense counsel called no witnesses at the hearing, but did introduce three items into evidence. The first item that defendant offered and the court took judicial notice of was the “Convention for the mutual extradition of fugitives from justice. Signed at Santo Domingo June 19, 1909; entered into force August 2, 1910.” That convention was thereafter codified at 36 US Stat 2468. Article I of that treaty reads, in pertinent part, “It is agreed that the Government of the United States and the Government of the Dominican Republic shall * * * deliver up to justice any person who may be charged with, or may have been convicted of any of the crimes specified [herein] committed within the jurisdiction of one of the Contracting Parties”. Article II, § 3 specifies rape as one of the extraditable offenses. While the treaty does include limiting language and discretionary authority regarding Dominican or United States citizens, it does set forth the appropriate procedures to be utilized to commence an extradition. (See, arts XI, XII, XIII.) Defense counsel also moved into evidence, and the court took judicial notice of, CPL 590.10. That section sets forth the procedural mechanism to be followed by the District Attorney when faced with a situation, as here, where a defendant is in a foreign country with which the United States has an extradition treaty and the offense with which he is charged is declared in such treaty to be an extraditable one.
*292 Defense counsel argues that the People have fallen short of the burden placed upon them by the Court of Appeals in Parker (supra) in that they have not exhausted any or all of the procedural remedies available to them to secure the defendant’s appearance. Citing Detective Hess’ testimony that no formal efforts have been made to commence extradition proceedings or even to make a threshold determination as to whether the treaty referred to by defense counsel is what it purports to be or does what it purports to do, defense counsel urges this court to deny the People’s motion to try this defendant in absentia. The People argue, in effect, that Parker mandates the People to make reasonable efforts to locate the defendant, but that the result of those efforts are irrelevant. This court strongly disagrees.
The Court of Appeals instructs lower courts to exercise sound discretion and to consider all appropriate factors in determining whether to try a defendant in absentia. The very first factor that the Court sets forth in Parker (supra) is to consider the possibility that the defendant could be located within a reasonable period of time. Common sense and logic dictate that if the answer to that question is “yes, the defendant could be located”, or as is the case here, “yes, the defendant has been located, we know his phone number and his street address in the Dominican Republic”, then a trial court must not try the defendant in absentia until and unless all reasonable efforts have been made to secure his presence in the jurisdiction. To allow the People to say that they have simply looked for, and even found the defendant and have thereby satisfied their burden under Parker would render meaningless the explicit language found in the decision’s final paragraph. The People have not cited, and this court cannot find, any authority for the proposition that a defendant may be tried in absentia when he has voluntarily left the jurisdiction, when his whereabouts are known to law enforcement and when the People have not availed themselves of all of the appropriate State and Federal mechanisms at their disposal to secure his return. At a minimum, the People must try to secure the defendant’s return before this court will try him in absentia on a charge which may result in up to 25 years in prison.
The court finds that the People have failed to demonstrate that attempts to secure the defendant’s appearance would be futile, as required by Parker (supra).
Accordingly, the People’s motion to try the defendant in absentia is denied, with leave to renew upon a showing that all *293 of the remedies available to the People to secure the defendant’s return have been both explored and exhausted as unsuccessful.
The bench warrant issued by the court on September 21, 1998 remains in full force and the case is returned to the Clerk of the County Court for action consistent with the foregoing.