OPINION
This is an appeal from the Portage County Municipal Court, Ravenna Division. Appellant, Shawn G. Liston, appeals the denial of his motion for a new trial.
On July 20, 1997, appellant was charged with driving under the influence of alcohol ("DUI"), in violation of R.C. 4511.19(A)(1). At the initial appearance on July 21, 1997, appellant entered a plea of not guilty. He was released on a $1,000 unsecured appearance bond. On August 22, 1997, appellant filed a motion to suppress the evidence. After the suppression hearing on November 19, 1997, appellant's motion was overruled.
At the suppression hearing, Captain John Sisco ("Sisco") testified that on July 20, 1997, shortly after 2:00 a.m., he observed appellant traveling at an excessive rate of speed and his tires squealing. Sisco also witnessed appellant violate several other traffic laws, so he activated his overhead lights and stopped appellant. As Sisco approached the vehicle, he detected a strong odor of alcohol on appellant's breath and noticed appellant had bloodshot eyes and slurred speech. Sisco asked appellant to exit the vehicle and performed several field sobriety tests on him. Appellant, who was unable to keep his balance, willingly performed the tests, but failed to successfully complete them. Subsequently, Sisco placed him under arrest for driving under the influence. Sisco further mentioned that Officer Michael Wilson ("Wilson") arrived at the scene to assist him and that Wilson kept appellant's passengers within the automobile.
On February 4, 1998, a jury trial commenced which lasted two days. The record contains Wilson's testimony, which included the following exchange:
 "MR. PLOUGH: Isn't it true that when you went to this school on alcohol — detection of people driving under the influence alcohol, that they told you that that test can be very accurate in determining whether somebody is under the influence of alcohol?
"MR. YORK: Objection.
"THE COURT: Overruled.
"MR. YORK: It's leading * * *.
"* * *
 "MR. PLOUGH: Well, isn't it true though that they can — some experts say that you can come within maybe one one hundredth —.
"THE COURT: Mr. Plough, now you are leading. * * *.
 "MR. PLOUGH: Well, your Honor, this is a Deputy who was at the scene that night.
"* * *
 "THE COURT: Just ask it in a different manner. You've been leading all day * * *.
 "MR. PLOUGH: Okay. But, this is a witness I'm entitled to lead, your Honor, because he is a hostile witness.
 "THE COURT: * * * [Y]ou didn't qualify him as a hostile witness.
 "MR. PLOUGH: I don't have to qualify him. The evidence will.
"* * *
 "MR. PLOUGH: * * * I am going to proffer for the record that the evidence rule clearly allows me to ask a leading —
 "THE COURT: You have not qualified him as a hostile witness. I'm not going to argue about this. * * *"
Following the foregoing exchange, defense counsel continued asking other leading questions, despite the prosecution's objections. In the midst of Wilson's testimony and at the close of the first day's session, the trial court stated that "* * * [w]e'll be back here tomorrow at 8:00. * * * We will resume at 8:00 sharp to get this over with. * * *"
On February 5, 1998, defense counsel stated that his client was not there yet as he worked until 2:00 a.m. Therefore, the trial court attended to some preliminary matters before resuming the questioning of Wilson. At about 8:10 a.m., the trial judge asked if appellant had arrived, but his attorney said, "* * * he worked until 2:00 a.m. I don't know where he is. I haven't talked to him this morning." Over defense counsel's objection, the trial court proceeded without appellant and told defense counsel to continue to examine Wilson. After Wilson's testimony, appellant was to testify. Since appellant was not in the courtroom yet, the trial court told appellant's attorney that it would "* * * give the Jury a five minute break until your man [appellant] is here. You might want to make a phone call."[1] Appellant arrived at the courthouse around 8:30 a.m. Appellant was found guilty of the charge of driving under the influence pursuant to R.C. 4511.19(A)(1).
In a judgment entry dated February 13, 1998, appellant was sentenced to serve ten days in jail and fined $450. The trial court suspended $200 of the fine and appellant's jail sentence as long as he attended and completed DUI school. In addition, his operator's license was suspended with certain driving privileges.
On February 18, 1998, appellant moved for a new trial because the trial court proceeded with the case despite his absence and since defense counsel was prevented from asking Wilson leading questions as permitted by the rules of evidence. Appellee, the state of Ohio, filed a response to appellant's motion on February 20, 1998. The trial court initially overruled appellant's motion, but later vacated its ruling and set the matter for hearing. A hearing was held on March 20, 1998.
At the hearing on the motion for a new trial, appellant testified that he overslept on February 5, 1998. He indicated that he worked until 2:00 a.m. that morning and that he woke up to his alarm clock at 7:30 a.m., but fell asleep again until 8:20 a.m. when his attorney called him. He arrived at the courthouse at about 8:30 a.m. Appellant also stated he knew he had to be in court at 8:00 a.m. He further mentioned that no one kept him at his house against his will or took his car keys to prevent him from getting to the trial. In a judgment entry dated March 20, 1998, the trial court overruled appellant's motion for a new trial and explained that:
 "* * * [appellant's] absence was voluntary and, therefore, he should not be granted a new trial.
 "It should be noted that [appellant] and defense counsel were also late on the first day of trial * * * and that the Court delayed commencement of the trial at least 15 minutes on that date.
"* * *
 "* * * defense counsel did not establish [Wilson] as a hostile witness. Further, * * * defense counsel disregarded the Court's instructions, and proceeded to ask leading questions.
"Therefore, the Court feels that [appellant] was not prejudiced by the attempt to follow proper procedure, and * * * [appellant] was not harmed by the testimony [of Wilson]."
Appellant timely filed a notice of appeal and raises the following as error:
 "[1.] The trial court erred, to the prejudice of [appellant], when it started the trial without [appellant] being present.
 "[2.] The trial court erred, to the prejudice of [appellant], by not allowing [appellant] to ask leading questions of the deputy sheriff who was present at the scene of the arrest."
In his first assignment of error, appellant contends that his constitutional right to be present at all stages of his trial was violated when the trial court proceeded despite his absence.
The Supreme Court of Ohio in State v. Hill (1995), 73 Ohio St.3d 433,444, held that a defendant "has a fundamental right to be present at all critical stages of his criminal trial." (Emphasis added.) See, also, Mentor v. Caswell (1997), 123 Ohio App.3d 256,259. The United States Supreme Court has stated that an accused is guaranteed the right to be present at all stages of a criminal trial when their absence may frustrate the fairness of the proceedings. Kentucky v. Stincer (1987), 482 U.S. 730, 745. This right is embodied in Crim.R. 43(A), which provides:
"The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the verdict. * * *"
Nonetheless, the Supreme Court of Ohio recently held that a defendant's right to be present at his or her trial is not an absolute right. State v. White (1998), 82 Ohio St.3d 16, 26. According to Crim.R. 43(A), a defendant's right to be present may be waived by his or her own acts. State v. Meade (1997), 80 Ohio St.3d 419,421. Thus, even if a defendant should have been present at a certain stage of the trial, "[e]rrors of constitutional dimension are not ipso facto prejudicial." Statev. Williams (1983), 6 Ohio St.3d 281, 286.
Additionally, "[w]hen a defendant voluntarily absents himself from the trial after the jury has been sworn the trial may proceed to its conclusion." State v. Van Erwin (Mar. 11, 1976), Cuyahoga App. No. 34641, unreported, at 2, 1976 Ohio App. Lexis 7579; see, also, Diaz v. United States (1912), 223 U.S. 442, 455. Such absences create a waiver of an offender's right to be present at all stages of the trial. Diaz at 455. This principle recognizes a defendant's right to be present and imposes a duty on the defendant to appear at trial. State v. Kirkland (1984), 18 Ohio App.3d 1,2. Furthermore, this court has stated that:
 "[it] is aware of the predicament a trial court is faced with when an accused fails to return for the conclusion of the proceedings against him. * * * [T]he trial court is placed in the unenviable position of having to determine whether or not to continue the proceedings without the accused, often with little or no evidence as to the reasons for the defendant's absence. However, the voluntariness of an accused's nonappearance is an issue of fact, and the court is permitted to find that a defendant's absence was voluntary when there [is] unrebutted evidence that the accused was aware of his obligation to attend the court's proceedings. * * *." In re Ruth (June 19, 1998), Ashtabula App. No. 96-A-0086, unreported, at 7-8.
In Taylor v. United States (1973), 414 U.S. 17, which is similar to the case at bar, the trial court proceeded with the trial, even though the defendant did not return from lunch. The Supreme Court affirmed the defendant's conviction stating that he waived his right to be present by not returning to the courtroom after lunch. Id. at 20.
In the case sub judice, the record reveals that a two-day trial began on February 4, 1998. Appellant attended the trial the first day, but the following morning, he was tardy despite the court's instruction that the case would commence at 8:00 a.m. The judge stated that appellant and his attorney were both late the first morning of the trial, and thus, the proceedings were delayed by fifteen minutes that day. The trial court continued with the proceedings despite appellant's absence. Appellant arrived around 8:30 a.m. Appellant explained that he was late because he overslept. He indicated that he was not prevented from attending the trial and he was not held at his house against his will. Since the trial court addressed preliminary matter until 8:10 a.m., appellant did miss much of the trial by arriving at 8:30 a.m.
Furthermore, appellant claims that he was absent for the remainder of defense counsel's direct examination of Wilson and he was not present when the prosecutor examined Wilson. However, this assertion is not well-founded. Wilson was questioned about departmental practices regarding DUI arrests and since appellant had no knowledge about that subject matter, he was not prejudiced.
It is our determination that the trial court properly decided that appellant's waiver was voluntary because, as we stated in Inre Ruth, supra, unreported, appellant's nonappearance was an issue of fact. Thus, the trial court was permitted to determine that his half-hour absence was willing when there was evidence that he was aware of his obligation to attend the proceedings. Furthermore, we conclude that appellant's tardiness did not deprive him of a fair trial, nor was there any indication that he was prejudiced by the trial court's decision. Accordingly, appellant's first assignment of error lacks merit.
In his second assignment of error, appellant argues that the trial court erred by not permitting appellant's attorney to ask Wilson, who was at the scene, leading questions pursuant to Evid.R. 611(C).
A decision as to whether a party may pose leading questions on direct examination is left to the sound discretion of the trial court. Ramage v. Cent. Ohio Emergency Services, Inc. (1992),64 Ohio St.3d 97, 111. Ordinarily, a trial judge is in a better position to evaluate the attitudes displayed by witnesses. Statev. Stearns (1982), 7 Ohio App.3d 11, 14. Absent an abuse of discretion, such a decision will not be overturned on appeal.Ramage at 111. The trial courts are provided guidance for making such decisions by Evid.R. 611(C) which states:
"* * * Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. * * * When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."
Pursuant to Evid.R. 611, a party may ask a witness leading questions when the party shows that the witness is hostile or is identified with the adverse party. State v. Warren (1990),67 Ohio St.3d 789, syllabus. Further, "[w]hen a witness demonstrates hostility during his examination by changing his testimony significantly from that which counsel has good reason to expect, he [is] traditionally subject to leading questions."Stearns, 7 Ohio App.3d at 14, citing State v. Springer (1956),165 Ohio St. 182.
In the case at bar, a review of the transcript reveals that Wilson was cooperative in replying to the questions appellant's attorney posed to him. Through Wilson's testimony, defense counsel was able to elicit the information he was seeking. Thus, appellant did not demonstrate that Wilson was a hostile witness. Also, despite the prosecutor's objections and trial court's admonition to defense counsel to refrain from asking leading questions, appellant's attorney continued interrogating Wilson with leading questions.
In his brief, appellant relies on State v. Matthews (Sept. 26, 1997), Clark App. No. 96-CA-0011, unreported, 1997 WL 593821. Even though there has been an amendment to Evid.R. 611(C), which provides for a witness to be identified with an adverse party, the trial court still has discretion to determine whether that witness should be treated as a hostile one. Specifically, the Matthews
court stated, "* * * the use of leading questions pursuant to Evid.R. 611(C) is within the trial court's broad discretion, and we will not reverse the trial court's ruling absent an abuse of that discretion." Id. at 11.
In the case at hand, defense counsel disregarded the trial court's warnings regarding the use of leading questions, and thus, appellant was not prejudiced in any way. Accordingly, pursuant toRamage, we conclude that the trial court did not abuse its discretion in making the evidential ruling pertaining to leading questions. Therefore, appellant's second assignment of error is without merit.
For the foregoing reasons appellant's assignments of error are not well-taken and the judgment of the Portage County Municipal Court, Ravenna Division is affirmed.
 _______________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.
[1] The record reveals that the trial judge told appellant's attorney to telephone appellant after Wilson testified. Appellant corroborated this fact with his testimony at the hearing on the motion for a new trial that he received his attorney's call at 8:20 a.m. Thus, the trial court did not deny defense counsel the right to call appellant.