[Cite as *State v. Howard*, 2020-Ohio-1400.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2019AP110045 |
| | : | |
| JERROD R. HOWARD | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Tuscarawas County
                                  Court of Common Pleas, Case No.
                                  2018CR120477



JUDGMENT:                         AFFIRMED



DATE OF JUDGMENT ENTRY:           April 7, 2020



APPEARANCES:

For Plaintiff-Appellant:                  For Defendant-Appellee:

MICHAEL J. ERNEST                         NICOLE R. STEPHAN
TUSCAWARAS CO. PROS. OFFICE               TUSC. CO. PUBLIC DEFENDER

125 East High Ave.                        153 N. Broadway St.
New Philadelphia, OH 44663                New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Appellant state of Ohio appeals from the October 30, 2019 Judgment Entry of the Tuscarawas County Court of Common Pleas granting the motion to suppress of appellee Jerrod R. Howard.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The following evidence is adduced from the record of the suppression hearing on September 20, 2019.

{¶3}   This case arose on May 28, 2018, when Officer James Miller of the New Philadelphia Police Department was on routine traffic patrol around 10:15 a.m.  Miller was northbound on Tuscawaras Avenue Northwest and passed a blue Honda driven by Natasha Harding, a person known to Miller from drug-related and D.U.S. incidents.  Miller observed a male passenger in the vehicle—appellee.  Suspecting Harding did not have a valid operator's license, Miller radioed dispatch to check the status of her license. Dispatch responded that Harding's license was suspended.  Miller executed a traffic stop in the 500 block of Fair Northwest.

{¶4}   Miller approached the vehicle and told Harding her license was suspended. He asked Harding to step out of the vehicle, intending to place her in his cruiser, and asked if there was anything illegal in the vehicle.  In response, Harding pulled a baggie of marijuana out of her bra and handed it to Miller.  Harding was then placed in the cruiser.

{¶5}   The male passenger did not have an operator's license with him but provided Miller with the Social Security Number (S.S.N.) of "Joseph Howard."  Miller pulled up a photo of Joseph Howard on his in-car computer and believed appellee to be the person in the photo.

{¶6} A second officer on scene, DeMattio, assisted Miller. When Harding produced the marijuana from her bra, Miller stated to DeMattio, "She has weed on her; check him." DeMattio patted appellee down and felt something in the right pocket of his cargo shorts; officers suspected the item was a baggie of narcotics, specifically methamphetamine. Miller seized and secured the contraband to submit for testing. Appellee was not arrested at the scene but was released pending test results on the contraband.

{¶7} Miller encountered appellee again several days later. A vehicle was parked, running, outside a "suspected narcotics house" and police were watching the vehicle. When it pulled away, the driver committed a traffic violation and the vehicle was stopped. The driver was Larry Austin Short, whose operator's license was suspended, and appellee was a passenger in the vehicle. Appellee again provided the S.S.N. of "Joseph Howard." As Miller investigated, a deputy of the Tuscarawas County Sheriff's Department (T.C.S.O.) overheard the traffic stop on the radio and asked Miller if the suspect had a tattoo sleeve. The deputy noted that if the suspect had a tattoo sleeve, he was likely Jerrod Howard, not Joseph Howard; the two were related and often used each other's identifying information, especially when one or the other had an arrest warrant. Jerrod had a tattoo sleeve; Joseph did not.

{¶8} A deputy came to the scene of the traffic stop and identified appellee as Jerrod Howard. Jerrod had an active felony arrest warrant and a knee injury which proved to be from a gunshot wound. He was arrested and transported to a hospital for treatment.

{¶9} Upon cross-examination, Miller acknowledged that he told the other officer to pat appellee down as soon as he knew Harding had drugs. When asked the purpose

of the pat-down, Miller responded to find drugs in the vehicle and for officer safety. He acknowledged, though, that he intended to search appellee as soon as he knew Harding had drugs on her person.

{¶10} A sergeant from the T.C.S.O. testified that he catalogues arrest warrants and protection orders, and that on May 28, 2018 appellee had an active warrant for felony nonsupport. The sergeant was aware that Jerrod Howard and Joseph Howard use each other's identifying information to avoid arrest. Jerrod has a sleeve of tattoos that Joseph does not have.

{¶11} Upon cross examination, the sergeant testified he is unaware whether appellee knew of the existence of the active arrest warrant when he was involved in the traffic stop on May 28, 2018.

{¶12} Appellee was charged by indictment with one count of aggravated drug possession pursuant to R.C. 2925.11(A) and (C)(1)(B), a felony of the third degree [Count I] and one count of identity theft pursuant to R.C. 2913.49(B)(1) and (I)(2), a felony of the fifth degree [Count II]. Appellee was initially summonsed upon the indictment, but he failed to appear and a warrant was issued for his arrest. We note that the Judgment Entry on Arraignment filed March 26, 2019 indicates appellee was arraigned upon Count I, aggravated drug possession, and entered a plea of not guilty, but the entry and record are silent as to Count II, identity theft.

{¶13} On August 6, 2019, appellee filed a motion to suppress evidence flowing from his stop and arrest, arguing the officer did not possess specific, articulable facts to believe appellee was armed and dangerous, or engaged in criminal activity, to justify the pat-down of his person. Appellant responded with a memorandum in opposition. The

matter proceeded to an evidentiary hearing on the motion to suppress on September 20, 2019, after which the trial court permitted the parties to file supplemental memoranda.

{¶14} By Judgment Entry filed October 30, 2019, the trial court sustained appellee's motion to suppress, finding that the scope of the search of appellee went beyond the scope of that permitted for a passenger under the totality of the circumstances.

{¶15} Appellant filed a notice of appeal pursuant to R.C. 2945.67(A) on November 5, 2019.  Appellant appeals from the trial court's judgment entry of October 30, 2019, raising one assignment of error:

### ASSIGNMENT OF ERROR

{¶16} "THE APPELLEE WAIVED HIS RIGHT TO ALLEGE THAT HIS RIGHTS UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED BASED UPON HIS OWN WRONGDOING."

### ANALYSIS

{¶17} In its sole assignment of error, appellant argues the trial court erred in sustaining appellee's motion to suppress.  We disagree.

{¶18} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145,

675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶19} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶20} In the instant case, appellant argues the trial court incorrectly decided the ultimate issue posed by the motion to suppress, to wit, whether the pat-down of appellee went beyond the permissible scope for a passenger. Appellant argues sustaining the motion to suppress allows appellee to benefit from his own wrongdoing (giving a false

name), and that the evidence from the pat-down should be admissible pursuant to the doctrine of inevitable discovery.

{¶21} In the instant case, appellee was subjected to a pat-down. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). Even without probable cause, however, a police officer may stop an individual and investigate unusual behavior when the officer reasonably concludes that the individual is engaged in criminal activity. *Terry,* supra. *Terry* requires that before stopping an individual, the officer must have specific and articulable facts which, taken together with rational inferences from those facts, reasonably leads the officer to conclude that the individual is engaged in criminal activity. *Id.* at 21. In determining whether an officer's beliefs are reasonable, a court must consider the totality of the circumstances involved. *State v. Bobo*, 37 Ohio St.3d 177, 180, 524 N.E.2d 489 (1988).

{¶22} The issue posed by this case is whether officers had a reasonable fear for their safety before patting appellee down. The authority to conduct a pat down search does not flow automatically from a lawful stop and a separate inquiry is required. *Terry,* supra, at 30. The Fourth Amendment requires an officer to have a "reasonable fear for his own or others' safety" before frisking. *Id.* Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), citing *Terry,* supra, 392 U.S. at 27. Whether that standard is met must

be determined from the standpoint of an objectively reasonable police officer, without reference to the actual motivations of the individual officers involved. *United States v. Hill,* 131 F.3d 1056, 1059 (D.C.Cir.1997), citing *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶23} It is well-settled that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). "To justify a pat-down of the driver or a passenger during a traffic stop, * * * just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).

{¶24} The trial court found the pat-down of appellee was not supported by reasonable suspicion and we agree.  The cases cited by the trial court in the decision sustaining the motion to suppress are applicable here.  In *State v. Brown,* the defendant walked down the street with an acquaintance who was drinking from an open container. 83 Ohio App.3d 673, 615 N.E.2d 682 (8th Dist.1992).  Police stopped both men and arrested the acquaintance on outstanding warrants.  They also patted down the defendant, Brown, and found contraband in his pocket.  The Eighth District found that although the stop and detention of the acquaintance was justified by the open-container violation, police had no indication Brown was involved in criminal activity, therefore his detention and subsequent pat-down were improper. *Id.,* at 676, citing *State v. Farese*, 71 Ohio App.3d 60, 62–63, 593 N.E.2d 32 (8th Dist.1990).  As the Supreme Court stated in *Ybarra v. Illinois* , 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), "a person's

mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.*

{¶25} Further, the Eighth District found, even if the initial stop of Brown was proper, the subsequent search exceeded the limitations of a *Terry* search because the officer had no reasonable basis to believe that his safety required a pat-down of Brown for weapons. *Terry, supra,* 392 U.S. at 27; *State v. Smith*, 56 Ohio St.2d 405, 409, 384 N.E.2d 280 (1978). A pat-down search for weapons is not to be used to discover evidence or contraband. *Terry, supra.* In the instant case, the candid admission by the officer that he intended to search appellee as soon as he knew Harding had marijuana indicates the pat-down of appellee was to discover evidence, not for officer safety.

{¶26} Similarly, in *State v. Sturm*, 5th Dist. Stark No. 1994-CA-0154, 1994 WL 728193, at *2, we reviewed a case with facts similar to the case at bar: the appellant was a passenger in a car stopped because the driver was under suspension; the driver was arrested; the appellant was searched as a matter of course, absent articulation of any belief in a concern for officer safety or evidence of criminal wrongdoing.

> Here, at the time of the traffic stop, appellant was merely an innocent third-party riding as a passenger in a vehicle that was to be impounded for its driver's wrong-doing. Therefore, at the time the driver was taken into custody, no probable cause existed to arrest appellant and the subsequent search of appellant, cannot be justified as incident to a lawful arrest. Nevertheless, the search of appellant, including her personal effects, would be reasonable if Deputy Benedict could articulate specific facts, based upon his experience,

that justified his belief that his safety or that of others was in danger.

No such articulation is present in this case.

{¶27} In the instant case, the evidence at the suppression hearing established police resolved to search appellee as soon as the driver, Harding, produced contraband. Accordingly, based on the authority of *Terry v. Ohio, supra,* the search of appellee was unreasonable under the facts of this case. A citizen may not be frisked on a belief that he possesses drugs; the belief must be that the citizen possesses a weapon. *Ybarra v. Illinois*, supra, 444 U.S. at 85 (stating that frisks are not permissible merely because the police have a reasonable belief that a person is connected with drug trafficking and may be concealing or carrying away contraband). The officer's assessment that Harding had drugs, so her passenger might have drugs, is insufficient to support the search of appellee. See, *State v. Cantelupe*, 7th Dist. Harrison No. 99-511 CA, 2000 WL 875356, *2.

{¶28} Appellant argues, though, that the evidence is not subject to suppression on two bases. First, appellant argues that suppressing the evidence permits appellee to benefit from his own bad actions. Appellant cites two illustrations of this general principle, the first being a defendant failing to appear at various stages of his own trial in *Diaz v. United States*, 223 U.S. 442, 458, 56 L.Ed. 500, 32 S.Ct. 250 (1912) and attempting to benefit from the resulting delays; and the second Evid.R. 804(B)(6), which prevents exclusion of certain hearsay statements if the witness's unavailability is due to the defendant's wrongdoing. We find neither of these scenarios extend to reversing the outcome of an impermissible pat-down. Even if we were to accept appellant's premise for the sake of argument, the general principle does not fit the facts of the instant case.

Appellee's bad act of providing false information was wholly independent of the pat-down. The impermissible pat-down occurred before appellee gave the name and identifying information of Joseph Howard. His providing of false information played no role in the officer's decision to pat him down; Miller testified he was determined to search appellee as soon as Harding produced the marijuana from her bra. Appellant's first argument is unavailing.

{¶29} Appellant further argues that the methamphetamine would have been found regardless because appellee would have been arrested upon the identity theft and the methamphetamine would have been discovered, therefore the evidence is admissible pursuant to the doctrine of inevitable discovery. We find this argument also inapplicable to the facts of the instant case. Our review of the record indicates that during Miller's interaction with appellee during the Harding arrest, he was not aware appellee was not "Joseph Howard." Appellee was not arrested after the Harding interaction because the only wrongdoing the officers knew of was possession of methamphetamine, and appellee was released because the substance was seized for testing. It was not until the later encounter with appellee during the traffic stop of Larry Austin Short that appellee's deception was revealed. Appellant also alludes to the fact that if the arrest warrant for appellee would have been discovered, the contraband would be an inevitable discovery upon his arrest. The arrest warrant, though, was not discovered until the Short encounter. We fail to discern, therefore, how inevitable discovery applies to evidence seized during the first traffic stop.

{¶30} We conclude the trial court properly granted appellee's motion to suppress. Appellant's sole assignment of error is not well-taken.

**CONCLUSION**

{¶31} Appellant's sole assignment of error is overruled and the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Gwin, J., concur.