[Cite as *State v. Harris*, 2023-Ohio-3271.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-73 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0030 |
| | : | |
| RONALD HARRIS II | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 15, 2023

. . . . . . . . . . .

KYLE J. LENNEN, Attorney for Appellant

ERICA D. LUNDERMAN, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Ronald Harris II was convicted after a jury trial of attempted murder, having weapons while under disability, carrying a concealed weapon, and improper handling of a firearm in a motor vehicle, along with accompanying firearm and repeat violent offender specifications. He received an aggregate sentence of 23 to 28½ years in prison. Harris appeals from his convictions, claiming that the trial court improperly impaneled the jury

without his presence and improperly denied his attorney's pretrial motion to withdraw. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} At 9:48 p.m. on January 9, 2022, after a brief verbal exchange, Harris drew a firearm from his pocket and shot Matthew Westmoreland as Westmoreland stood by the front door to the two-story apartment building in which they both lived. The bullet entered Westmoreland's chest, exited his back, went through the front door, and lodged in a wall in the foyer. Harris left the scene and went to a residence in Urbana, where the police later found him. The gun Harris used was located in his vehicle behind the residence. Harris had prior felony convictions for aggravated robbery and drug abuse.

{¶ 3} Less than two weeks later, Harris was charged in a seven-count indictment with attempted murder, felonious assault, carrying a concealed weapon, improper handling of a firearm in a motor vehicle, improperly discharging a firearm at or into a habitation, and two counts of having weapons while under disability. The attempted murder and felonious assault counts included a firearm specification and a repeat violent offender specification.

{¶ 4} In February 2022, Harris entered a plea of not guilty by reason of insanity, and his defense counsel raised questions about his competency. The trial court ordered a competency evaluation. On April 11, 2022, prior to the competency evaluation, defense counsel moved to withdraw on the ground that Harris wished to represent himself. Counsel requested an expedited hearing on the motion. At the hearing on April 14, the trial court indicated that it wanted to wait to rule on the motion until the competency

report was received and a competency hearing held.

{¶ 5} The competency hearing was held on April 28, 2022, during which the parties stipulated to the competency report finding Harris to be competent. The trial court also talked extensively with Harris about his desire to represent himself. Ultimately, Harris requested that a private attorney (rather than a public defender) be appointed to represent him. The court agreed and permitted Harris's counsel to withdraw. Later that day, the trial court appointed new counsel for Harris. The jury trial was scheduled for May 23, 2022. New counsel requested a continuance of that date, which was granted. The trial was rescheduled for July 27, 2022.

{¶ 6} On May 16, Harris filed a motion to suppress the evidence obtained from the search of Harris's vehicle. Defense counsel cited deficiencies in the search warrant and in the execution of the warrant. After a hearing on June 27, 2022, the trial court denied the motion to suppress. Harris also filed several pro se motions between May and July 2022. The trial court overruled these motions because he was represented by counsel.

{¶ 7} On July 26, 2022, the day before trial, defense counsel sought to withdraw. He represented that "communication and trust between counsel and the Defendant has broken down to the point that effective representation is no longer possible. The Defendant has requested on more than one occasion new counsel and/or to represent himself." The trial court held a hearing that morning. After speaking with defense counsel and Harris and addressing Harris's concerns, the trial court overruled the motion.

{¶ 8} A two-day jury trial began on July 27, 2022, as scheduled. The trial court noted, at the outset, that Harris was not present and was "refusing to come into the

courtroom." The court explained to the prospective jurors that Harris had the right to be there and knew that he could come in at any time, and although the court and the parties were uncomfortable with his absence, "really we have no choice but to proceed without him." Jury selection proceeded and the jury was impaneled and sworn without Harris present. He joined the proceedings after the lunch recess, at which time the prosecutor gave his opening statement.

{¶ 9} After opening statements, the State presented the testimony of Westmoreland, a responding Springfield police officer, an eyewitness, the evidence technician who processed the scene and Harris's vehicle, a firearms identification examiner with the Ohio Bureau of Criminal Investigations (BCI), and two Springfield detectives. It also offered numerous exhibits, including surveillance videos from the apartment building, still photographs, the spent bullet and cartridge, the gun and magazine, Harris's clothing, a bullet found in Harris's pocket, the BCI report, and certified copies of the judgment entries for Harris's prior convictions. Harris testified on his own behalf, claiming that he had acted in self-defense. After deliberating, the jury found Harris guilty of all charges and the accompanying firearm specifications. Per R.C. 2941.149(B), the trial court later determined that Harris was a repeat violent offender.

{¶ 10} At sentencing, the trial court merged the attempted murder, felonious assault, and improper firing of firearm charges and also merged the two having weapons while under disability charges. It imposed 3 years for having weapons under disability, 18 months for carrying a concealed weapon, and 18 months for improper handling of a firearm in a motor vehicle, to be served concurrently. That aggregate three-year

sentence was to be served consecutively to a term of 11 to 16½ years for attempted murder. The trial court also sentenced Harris to three years for the firearm specification and six years for the repeat violent offender specification. Harris's total sentence was 23 to 28½ years in prison.

{¶ 11} Harris appeals from his convictions, raising two assignments of error. We will address them in reverse order.

## II. Motion to Withdraw

{¶ 12} In his second assignment of error, Harris claims that the trial court erred by denying his trial counsel's motion to withdraw.

{¶ 13} Defense counsel moved to withdraw on July 26, 2022, the day before trial. At the hearing on the motion, which was held the same day, defense counsel told the court: "I don't believe I can effectively represent him at this time. Our communication and our relationship has broken down to that extent. Mr. Harris has informed me on more than one occasion that he either wants another attorney or he wants to represent himself. Up until yesterday I thought we could work through that. I don't believe that's the case anymore and I'm asking to withdraw." July 26, 2022 Hrg. Tr. at 3.

{¶ 14} The court then turned to Harris and asked him "what's the problem." When Harris responded that there were "serious defense counsel issues that I would like addressed professionally in my due process," the court asked him to identify those problems. Harris first mentioned that he had filed several pro se motions. The court told Harris that he was not allowed to file motions himself while represented by counsel, so it was not defense counsel's fault. Harris responded that he expected defense

counsel to refile the motions. The court then turned to defense counsel and asked if he had seen the motions and whether he thought the motions had any merit. Counsel said that he had seen them but did not think they had merit.

{¶ 15} Harris next told the court that he wanted to file a "Brandy" motion, which the court interpreted as a *Brady* motion. The court asked the prosecutor whether the State had provided discovery to the defense. The prosecutor responded that "all the information has been turned in, the witness list and –." The court told Harris, "Okay. You've gotten everything that the State has so what's your next complaint?" Harris raised again that he had not received a "fair ruling on my own motions." The court reiterated that he could not file pro se motions when represented by counsel and counsel thought those motions lacked merit.

{¶ 16} Finally, Harris raised that he did not believe he could get a fair trial and he wanted a "change of venue," meaning that he wanted a different judge to rule on his motions. The court explained what a change of venue actually meant and that he would continue to be the judge. Harris stated that he wanted a new judge due to the court's "lack of accepting the motions and the defense towards my case." The trial court repeated why it had rejected his pro se motions and described the trial process, including the State's burden of proof at trial, that he would have the right to present evidence (or not) and defend himself at trial, and that he had the right to testify in his own defense if he wanted to but could not be forced to. The court concluded:

> You've already been through one attorney, [former defense counsel], okay?
>
> We appointed [defense counsel] to represent you. [Defense counsel] is an

excellent attorney. He rarely has problems getting along with his clients so I'm not going to play this game where the day before trial you start complaining about things and asking for another lawyer. [Defense counsel] is your lawyer. He's going to represent you tomorrow.

July 26, 2022 Hrg. Tr. at 8-9.

{¶ 17} Harris now argues that the trial court did not adequately inquire about the alleged breakdown in communication before denying defense counsel's motion to withdraw.

{¶ 18} An indigent defendant is entitled to competent representation by the attorney that the trial court appoints to represent him or her. *State v. Brock*, 2017-Ohio-759, 85 N.E.3d 1072, ¶ 25 (2d Dist.). However, it is well established that a defendant has no right to representation by a particular attorney. *State v. Johnson*, 2d Dist. Champaign No. 2019-CA-7, 2019-Ohio-4595, ¶ 27, citing *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999). To justify the discharge of a court-appointed attorney based on a breakdown in the attorney-client relationship, the defendant generally must show that the breakdown is of such magnitude as to jeopardize the defendant's Sixth Amendment right to effective assistance of counsel. *Brock* at ¶ 25; *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988).

{¶ 19} "[S]ubstitution of counsel is not warranted due to disagreements about trial strategy or tactics." *State v. Monahan*, 2d Dist. Darke No. 2018-CA-2, 2018-Ohio-4633, ¶ 58. Moreover, "mere hostility, tension and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not

interfere with the preparation and presentation of a defense." *State v. Furlow*, 2d Dist. Clark No. 2003-CA-58, 2004-Ohio-5279, ¶ 12, citing *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 12 (1st Dist.). "Competent representation does not include the right to develop and share a 'meaningful attorney-client relationship' with one's attorney." *Gordon* at ¶ 12; *see State v. Ware*, 2d Dist. Darke No. 2018-CA-8, 2019-Ohio-2595, ¶ 36.

{¶ 20} When reviewing whether a trial court erred in denying a motion for new counsel, an appellate court should consider: (1) the timeliness of the motion, (2) the adequacy of the trial court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice. *State v. Jones*, 91 Ohio St.3d 335, 342, 744 N.E.2d 1163 (2001), citing *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996); *State v. Lawson*, 2020-Ohio-6852, 164 N.E.3d 1130, ¶ 40 (2d Dist.).

{¶ 21} The decision whether to remove court-appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. *Furlow* at ¶ 13. A trial court abuses its discretion if it makes an unreasonable, unconscionable, or arbitrary decision. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 22} We find no abuse of discretion in the trial court's denial of defense counsel's motion to withdraw. Harris's motion was filed the day before his jury trial was to begin,

and the court thoroughly inquired into the conflict between Harris and his attorney. While the trial court's discussion with Harris did not expressly ask Harris for his explanation of the breakdown in communication, the court's questioning sought Harris's bases for his conflict with defense counsel. Harris's primary concern was counsel's failure to pursue the issues that Harris had tried to raise in his pro se motions, which the trial court would not consider. Defense counsel told the court that he had reviewed the pro se motions and did not believe they had merit. The trial court could have reasonably concluded that new counsel would reach a similar conclusion and that substitution of counsel would have little benefit. Harris also mentioned wanting to file a discovery motion and to have a new judge review his motions, and the trial court addressed those concerns, including by explaining Harris's rights at trial the following day. Although defense counsel stated that a breakdown in communication had occurred, Harris's responses at the hearing did not reflect that the breakdown was of such magnitude as to jeopardize his Sixth Amendment right to effective assistance of counsel.

{¶ 23} Harris's second assignment of error is overruled.

### III. **Harris's Absence During Jury Selection**

{¶ 24} In his first assignment of error, Harris claims that the trial court improperly impaneled a jury without his presence. He argues that Crim.R. 43(A)(1) unambiguously requires a defendant to be present for the commencement of the trial and thus the trial court erred in commencing the trial without him.

{¶ 25} Harris's jury trial was scheduled to begin at 9:00 a.m. on July 27, 2022. At 9:45 a.m., the court proceeded with Harris's case with counsel and prospective jurors

present; Harris was not there. After the State indicated that it was prepared to proceed, the court addressed the prospective jurors, apologized for the delay, and introduced the court staff, attorneys, and the State's representative. It continued:

Obviously you see that Mr. Harris is not seated at counsel table. He is refusing to come into the courtroom. I'm not exactly sure why but he obviously has the right to be here and I believe he understands that and we've made it clear to him that any time he wants to change his mind, he's welcome to come in, have a seat at counsel table, and to be with us. So he knows that and he's nevertheless not coming into the courtroom. So really we have no choice but to proceed without him. I'm very uncomfortable with that. I know the Prosecutor's uncomfortable with that and probably most of all, [Defense Counsel] is uncomfortable with that. And maybe you're uncomfortable with that but the bottom line is it's his choice and he's choosing to not come in. So hopefully he will join us sooner rather than later and you'll have the opportunity to be introduced to him.

Trial Tr. at 8-10.

{¶ 26} The court then proceeded with preliminary instructions to the jury pool. Among the instructions, the court told the group "not to read anything into the fact that Mr. Harris isn't coming into the courtroom. It could be for a lot of different reasons or one reason. We don't know but that shouldn't affect one way or another how you examine the case and the evidence of the case." Trial Tr. at 12. After providing the preliminary

instructions, 12 prospective jurors were asked to sit in the jury box and all prospective jurors were sworn. The prosecutor then conducted his voir dire examination.

{¶ 27} After the prosecutor finished his questioning, the trial court called a brief recess to allow defense counsel to consult with Harris to see if he would like to come into the courtroom. When court resumed, Harris again was not present. *See, e.g.,* Trial Tr. at 32, 61. Defense counsel told the court, "We're ready to proceed," and defense counsel then conducted his voir dire examination.

{¶ 28} After challenges for cause and the examination of additional prospective jurors, the court called a 15-minute recess before continuing with jury selection. Defense counsel again spoke with Harris during the recess about coming into the courtroom. *See* Trial Tr. at 71, 73-74. However, court resumed with only counsel and the prospective jurors present. *See* Trial Tr. at 67, 68-69, 76. Defense counsel told the trial court that Harris still did not want to come in. Trial Tr. at 74.

{¶ 29} The jury was selected, impaneled, and sworn in Harris's absence. Trial Tr. at 109. No prospective juror who expressed that he or she would be influenced by Harris's absence was part of the impaneled jury.

{¶ 30} The trial court completed the morning session with additional instructions for the jury. At the end of its instructions, it told the jury: "Periodically we will check to see if the Defendant would like to come into the courtroom but I just want everybody here to understand that that's entirely within his control." Trial Tr. at 117. After telling the jury that the afternoon session would begin with opening statements, the court excused the jury for lunch.

{¶ 31} The court then stated that it "want[ed] to make sure the record's clear that the Defendant is downstairs in the holding cell." Trial Tr. at 118. The courtroom deputy confirmed that he was. The courtroom deputy also stated that Harris had been asked approximately five or six times during the morning whether he wanted to attend trial. The court obtained assurances that Harris would be brought to the courtroom right away if he expressed his desire to come. The trial court then asked defense counsel to check with Harris during breaks to see if he wanted to come into court. Defense counsel responded that he had been doing that and would continue to do so. The court also encouraged defense counsel to ask for a recess at any time to confer with Harris, even in the middle of witnesses. Finally, the court stated:

> I wanted to put on the record too that I suppose we could have brought him up with some level of force and I did not want to do that because I think had that happened, I think that might be even, at least as, I think it would be more prejudicial if he were to be resisting and he was forced to come into the courtroom. I just don't think that would be a good scene for anybody but, again, I do just want to make the record clear that it's completely up to him any time he wants to come in we'll make it happen.

Trial Tr. at 120.

{¶ 32} When court resumed after the lunch recess, Harris was present. Trial Tr. at 120. The trial court expressly noted Harris's attendance after the State's opening statement. Trial Tr. at 124-125. Harris was in the courtroom for the rest of the trial.

{¶ 33} On appeal, Harris claims that the trial court erred by commencing his trial in

his absence, contrary to the express language of Crim.R. 43(A).

{¶ 34} A defendant has a fundamental right to be present at all critical stages of his or her criminal trial. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, Section 10, Ohio Constitution; Crim.R. 43(A); *e.g.*, *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 83. However, a defendant's absence does not necessarily result in prejudicial or constitutional error. *Grate* at ¶ 83. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only*." (Emphasis sic.) *Id.*, quoting *Snyder v. Mass.*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 139.

{¶ 35} Crim.R. 43(A) incorporates a defendant's due process right to be physically present. *State v. Williams*, 6 Ohio St.3d 281, 286, 452 N.E.2d 1323 (1983) ("In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim.R. 43(A) * * *.") That rule provides, in relevant part:

(1) Except as provided in Crim.R. 10 and divisions (A)(2) and (A)(3) of this rule, the defendant *must be physically present* at every stage of the criminal proceeding and trial, *including the impaneling of the jury*, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence *after the trial has been commenced in the defendant's presence* shall not prevent continuing the trial to and including the verdict. A corporation may appear by counsel for all purposes.

(Emphasis added.)   "A jury trial commences after the jury is impaneled and sworn in the presence of the defendant."   *State v. Meade*, 80 Ohio St.3d 419, 687 N.E.2d 278 (1997), syllabus (construing and applying Crim.R. 43(A)).

{¶ 36} A defendant's right to be present may be waived.   Because defense counsel may act on behalf of his or her client, an express waiver of defendant's presence by defense counsel is sufficient to waive the Crim.R. 43 presence requirement.   *State v. Vinzant*, 2d Dist. Montgomery No. 18546, 2001 WL 1598030, *1 (Dec. 14, 2001).

{¶ 37} In addition, waiver may occur through the defendant's own actions, including the defendant's voluntary absence from court proceedings after trial has commenced.   *Meade* at 421; *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); *State v. Kidd*, 8th Dist. Cuyahoga No. 109126, 2020-Ohio-4994, ¶ 22.   "A defendant's absence is voluntary if it is a product of his own free choice and unrestrained will."   *State v. Paige*, 8th Dist. Cuyahoga No. 97939, 2012-Ohio-5727, ¶ 22, citing *State v. Carr*, 104 Ohio App.3d 699, 703, 663 N.E.2d 341 (2d Dist.1995).   When a defendant refuses to leave his or her cell to attend a court proceeding, the defendant is considered voluntarily absent.   *See Grate,* 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, at ¶ 85 ("Grate voluntarily made himself absent from the hearing by refusing to leave his cell and attend the video hearing.").

{¶ 38} In general, defense counsel's failure to object to a defendant's absence results in a waiver of the Crim.R. 43 error, and we review the matter for plain error.   *Carr* at 703.   Plain error arises only when, "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978),

paragraph two of the syllabus.

{¶ 39} Harris focuses on the fact that he was absent when his trial commenced. In *Meade*, the Ohio Supreme Court held that a trial court erred when it commenced the trial without the defendant's presence. In that case, Meade was in the courtroom while his attorney and the prosecutor held last-minute plea discussions on the morning of trial. After hearing that any sentence would likely include prison, he absconded. After waiting for a period of time with prospective jurors present, the trial court proceeded with jury selection. Meade never appeared for his trial, and he was found guilty in absentia, over defense counsel's objections. The Eighth District reversed, holding that Meade's trial had not officially commenced when he disappeared from the courtroom and that the trial court had erred in proceeding with the trial in his absence.

{¶ 40} In affirming the appellate court, the Ohio Supreme Court reiterated that a defendant's right under Crim.R. 43(A) is not absolute, and a defendant's voluntary absence "after the trial has been commenced in [the defendant's presence]" is deemed a waiver of the right to be present. *Meade*, 80 Ohio St.3d at 421, 687 N.E.2d 278. However, a unanimous Court concluded that, because Meade had fled before the jury was impaneled and sworn, the trial court should have continued the proceedings until Meade reappeared or was apprehended. *Id.* at 424.

{¶ 41} In reaching that conclusion, the supreme court reviewed the Eighth District's analysis of United States Supreme Court case law interpreting former Fed.R.Crim.P. 43(a), which held that the rule prohibited the trial of a defendant who was not present at the beginning of trial. *Id.* at 422. Focusing on *Crosby v. United States*, 506 U.S. 255,

113 S.Ct. 748, 122 L.Ed.2d 25 (1993), the Ohio Supreme Court noted *Crosby's* holding that "[t]he language, history, and logic of [federal] Rule 43 support a straightforward interpretation that prohibits the trial *in absentia* of a defendant *who is not present at the beginning of trial*." (Emphasis added by *Meade*.) *Id*., quoting *Crosby* at 262.

{¶ 42} The Ohio Supreme Court recognized that the federal rule made a "logical distinction" between a defendant's pretrial versus mid-trial absence. *Crosby* stated that "the costs of suspending a proceeding already under way will be greater than the cost of postponing a trial not yet begun. If a clear line is to be drawn marking the point at which the costs of delay are likely to outweigh the interests of the defendant and society in having the defendant present, the commencement of trial is at least a plausible place at which to draw that line." *Id*. at 422-423, quoting *Crosby* at 261. The Ohio Supreme Court also repeated *Crosby's* rationale that "under the common law, felony defendants generally had an unwaivable right to be present at trial and that an exception to this rule, set forth in Fed.R.Crim.P. 43, stemmed from the court's holding in *Diaz v. United States* (1912), 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500." The Ohio Supreme Court distinguished Meade's situation from *Diaz* and *Fight v. State*, 7 Ohio 180, Pt. I (1835), which *Diaz* cited, because they involved a defendant's flight after trial had begun with the defendant present.

{¶ 43} The *Meade* Court further found the Eighth District's interpretation of Crim.R. 43(A) to be consistent with R.C. 2945.12, entitled "when accused may be tried in his absence." That statute provides:

A person indicted for a misdemeanor, upon request in writing subscribed by

him and entered in the journal, may be tried in his absence by a jury or by the court. *No other person shall be tried unless personally present*, but if a person indicted escapes or forfeits his recognizance *after the jury is sworn*, the trial shall proceed and the verdict be received and recorded. If the offense charged is a misdemeanor, judgment and sentence shall be pronounced as if he were personally present. If the offense charged is a felony, the case shall be continued until the accused appears in court, or is retaken.

(Emphasis added.) The Court recognized that R.C. 2945.12 "permits the trial of accused felons in absentia only if their voluntary absence occurred *after* the jury has been sworn." (Emphasis sic.) *Meade* at 424. The Court also found the Eighth District's interpretation to be consistent with the law regarding the Fifth Amendment protection against double jeopardy. *Id.*

{¶ 44} In this case, the record is clear that Harris was not present when his trial commenced, as defined in *Meade*. However, although the trial court told the jury that all involved were "very uncomfortable" with proceeding without Harris present, defense counsel did not object to the trial court's decision to proceed with the trial. Accordingly, we must review Harris's claim for plain error.

{¶ 45} We further emphasize that, unlike the defendant in *Meade*, Harris was not tried in absentia. While he missed jury selection, Harris attended the remainder of his jury trial, including the prosecutor's opening statement (defense counsel deferred and later waived his opening statement), the State's case-in-chief, his own defense case

during which he testified, closing statements, jury instructions, and the pronouncement of the verdicts. Harris's defense counsel participated in the entirety of the trial.

{¶ 46} Moreover, we agree with the State's argument that Harris invited the trial court's error due to his deliberate refusal to attend the jury selection portion of trial. Under the invited error doctrine, an appellant cannot attack a judgment for errors committed by himself or herself, for errors that the appellant induced the court to commit, or for errors into which the appellant either intentionally or unintentionally misled the court, and for which the appellant was responsible. *State v. Keeton*, 2d Dist. Montgomery No. 29535, 2023-Ohio-1230, ¶ 14, citing *State v. Minkner*, 194 Ohio App.3d 694, 2011-Ohio-3106, 957 N.E.2d 829, ¶ 24 (2d Dist.).

{¶ 47} In its appellate brief, the State points to *State v. Adams*, 12th Dist. Fayette No. CA95-05-014, 1996 WL 31151 (Jan. 29, 1996), for its contention that invited error applies in this case. In *Adams*, the defendant refused to leave his cell for jury selection, and the trial court proceeded in the defendant's absence. After jury selection was completed, the court took a recess; Adams was present when court resumed. On appeal, the Twelfth District upheld Adams's conviction. It noted that Adams "was fully aware of his right to be present and that jury selection was part of the trial, and yet he refused to be present for jury selection. * * * Appellant did not appear until noon, the time appellant was aware that the jury selection would have been completed." *Id.* at *2. The appellate court considered trial in Adams's absence to be invited error. It concluded that the trial court had not abused its discretion in proceeding with jury selection, as Adams's deliberate absence constituted a knowing and voluntary waiver of his right to be present.

*Id.* at *3, citing *United States v. Tortora*, 464 F.2d 1202 (2d Cir.1972).

**{¶ 48}** *Adams* was rendered prior to *Meade*, but other jurisdictions applying analogous provisions to Crim.R. 43 have similarly applied the invited error doctrine when faced with a defendant who refused to leave his or her cell to attend trial. *See, e.g.*, *United States v. Perkins*, 787 F.3d 1329 (11th Cir.2015); *State v. Howze*, 85 Cal.App.4th 1380 (2001) ("a defendant who refuses to come to court under such circumstances is estopped to assert that the trial improperly commenced in his absence."). Moreover, courts have generally found a defendant's obstructive behavior to avoid attending trial to be a waiver of their right to physical presence. *E.g., California v. Venancio*, Cal.App.No. B320236, 2023 WL 3365593 (May 11, 2023); *State v. Jefferson*, __ N.C.App. __, 886 S.E.2d 180 (2023) ("Defendant, though his actions, waived his right to be present during a portion of trial by actively refusing the trial court's repeated offers for Defendant to attend trial made during multiple colloquies between Defendant and the trial court.").

**{¶ 49}** In one egregious case, the defendant, a so-called sovereign citizen, spoke with family members prior to trial, trying to understand how not to be present for his federal criminal trial. *Perkins.* In a recorded jail phone call, he told his mother that he planned to act crazy to obstruct the proceedings. On the first day of trial, Perkins refused to come out of his holding cell and threatened that if the marshals tried to force him to go to the courtroom, he would go "kicking and screaming." The district judge discussed at length with a courtroom deputy, Perkins's lawyer, and the prosecutor whether to have the marshals bring Perkins to the courtroom. The court considered alternative audio and video arrangements that would enable Perkins to observe the trial if he was not willing to

attend.

**{¶ 50}** After many failed attempts to persuade Perkins to enter the courtroom so that the court could begin jury selection, the trial judge decided to bring the courtroom to him. The judge, counsel for the parties, and a court reporter went to an interview room in the holding area to discuss the situation with Perkins on the record. The district court noted that "a transcript cannot adequately convey the threatening demeanor of the defendant nor the rage that he exhibited throughout." *United States v. Perkins*, N.D. Ga. No. 1:10-cr-97-1-JEC-LTW, 2013 WL 3820716, *6 (July 23, 2013). The judge told Perkins that she wished he would reconsider his refusal to peaceably come to the courtroom, and she explained the process that would be used if he would not. Perkins refused to attend, and the trial proceeded in his absence. After the first day of trial, Perkins was "quite euphoric, apparently believing that he had outsmarted everyone"; he boasted to his mother how he had avoided going into the courtroom. *Id.* at *8.

**{¶ 51}** Perkins later sought a new trial on the ground that he had not been physically present for voir dire, as required by Fed.R.Crim.P. 43(a). The trial court denied the motion, stating that trial had begun when the court conducted proceedings in the lock-up interview room prior to jury selection. *Id.* at *15. (We recognize that this interpretation of when trial commences differs from *Meade*.) The court further concluded that, "[b]ased on Perkins' repeated assertions that he did not wish to participate in his trial, as well as recordings revealing Perkins' intention to trick the Court and thereby void any subsequent conviction, * * * Perkins invited any Rule 43 error that may have occurred. Further, neither he nor his attorney objected at any time to the procedure that the Court

followed." *Id.* at 22.

**{¶ 52}** The Eleventh Circuit affirmed. It emphasized that "[t]he rights that the Constitution provides to a criminal defendant are meant as a shield, not a sword, and the Federal Rules of Criminal Procedure provide a framework for the fair and efficient administration of all criminal cases." *Perkins*, 787 F.3d at 1338. As for Perkins's behavior, the circuit court agreed that he had invited any Crim.R. 43 error:

A criminal defendant who engages in this kind of obstructive behavior does so at his own peril. The system that Mr. Perkins attempted to disrupt is designed to protect not only his rights but the rights of all defendants to the fair administration of the proceedings against them. A district judge cannot permit a single defendant to jeopardize the whole system. We find no readily apparent reversible error in the district judge's decision * * * to conduct the trial without Mr. Perkins in the courtroom, but we do not pause long to consider these issues because we find that Mr. Perkins invited any error that the district court may have committed. Therefore, we reject Mr. Perkins's * * * argument that the district court violated Rule 43.

*Id.* at 1339.

**{¶ 53}** Returning to Harris's case, the record establishes that Harris was well aware that his trial was to begin on the morning of July 27, 2022. The trial court had issued a scheduling order on May 20, 2022, stating that Harris's jury trial was set for 9:00 a.m. on July 27, 2022. In addition, the trial court discussed the upcoming trial with Harris during the July 26, 2022 hearing on defense counsel's motion to withdraw. At the

conclusion of that hearing, the court told Harris: "I'll see you tomorrow morning at 9 o'clock. We'll pick a jury and they will decide whether or not you're guilty. That's how this works." July 26, 2022 Hrg. Tr. at 9.

**{¶ 54}** Harris nevertheless refused to leave the holding cell and come into the courtroom on the morning of trial. The trial court's initial remarks to the jury, given at 9:45 a.m., included an apology for keeping them waiting. Prior to the beginning of voir dire, the court indicated that Harris understood that he had a right to attend the trial and that he could enter the courtroom at any time. Despite this information, Harris would not come into the courtroom. The courtroom deputy checked with Harris five or six times that morning to see if he wanted to appear, and defense counsel spoke with Harris during recesses. It is clear that Harris's absence was a deliberate choice. And while this record does not include the level of obstruction and threat of physical violence that existed in *Perkins*, we find no plain error in the trial court's decision to commence the trial in his absence, given Harris's refusal to leave the holding cell and to be physically present for trial.

**{¶ 55}** We also do not fault the trial court for failing to obtain Harris's presence by force. As stated by the district court in *Perkins*:

For sure, a court could require the marshals to use whatever force is necessary to physically compel these resisting defendants into submission, and into the courtroom. But where there is an alternative, this does not seem like a very good practice either for the defendants who could be injured, or for the marshals, who could also get hurt and who could well

become defendants in a § 1983 suit. Nor is it a good idea for the court system. Trials should not become the judiciary's version of the Jerry Springer show. Besides, requiring that a manacled, shouting defendant make a one-minute cameo appearance before aghast jurors, who probably had anticipated a speck more dignity in their federal jury service, seems to be a high price to pay to satisfy one rather indefinite phrase in Rule 43: "initially present."

*Perkins*, N.D. Ga. No. 1:10-cr-97-1-JEC-LTW, 2013 WL 3820716, at *21.

{¶ 56} We caution that our conclusion should not be read as permission to commence a trial, at the earliest opportunity, when a defendant expresses reluctance to leave his or her cell for trial. Trial courts should make every reasonable effort to obtain a recalcitrant defendant's cooperation, and we encourage trial courts to make a detailed record of their efforts and of the defendant's verbal and physical behavior. Of course, courts retain the option of continuing the trial date if it appears that the defendant's future attendance can be obtained.

{¶ 57} On the record before us, we cannot conclude that the trial court committed plain error in commencing the trial after Harris refused to leave the holding cell. Rather, Harris invited the Crim.R. 43(A) error when he refused to leave his cell. Harris's first assignment of error is overruled.

## IV. Conclusion

{¶ 58} The trial court's judgment will affirmed.

. . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.